BELLONA, The, (CROSS v.) See Case No. 3,428.

BELLONA, The, (ELLISON v.) See Cases Nos. 4,406 and 4,407.

---

### Case No. 1,278.

### In re BELLOWS.

[3 Story, 428;[1] 7 Law Rep. 119.]

Circuit Court, D. New Hampshire. July Term, 1844.[2]

BANKRUPTCY—LIEN OF ATTACHMENT — ENJOINING CREDITOR—CONTEMPT—PLEADING DISCHARGE OF BANKRUPT.

1. An attachment, on mesne process, is not a lien in the sense of the common law.

[1] [Reported by William W. Story, Esq.]

[2] [Reversed by supreme court in Peck v. Jenness, 7 How. (48 U. S.) 612.]

2. Where a suit is commenced against the bankrupt, and property attached on mesne process, before proceedings in bankruptcy, the certificate in bankruptcy may be pleaded in bar of further proceedings in the suit.

3. The district court, upon the application of the bankrupt, or of his assignee, before the discharge is granted, may issue an injunction to the creditor, to stay proceedings until the further order of the court.

[Cited in Re Wallace, Case No. 17,094. See, also, In re Foster, Id. 4,960.]

4. If the creditor does not reside within the district, an injunction against his agents or attorneys within the district will be effectual.

5. If the creditor, his agents or attorneys, proceed in the suit, notwithstanding the injunction, they are liable to be committed for contempt.

6. If the bankrupt do not obtain his discharge, the creditor may petition for a dissolution of the injunction, and, if it is granted, he may proceed in his suit to judgment and execution.

7. If the discharge is obtained, and the creditor intend to contest its validity on the trial in the state court, he should apply to the district court for leave so to do.

8. If the validity of the discharge, as such, is not contested, and the state court, on demurrer, should hold the discharge invalid as to the property attached, and the creditor proceed to judgment and execution, the district court should enjoin the sheriff from levying on the attached property, and order him to deliver the same to the assignee, or, if it has been sold, to bring the proceeds into court.

9. An attachment of property on mesne process, bona fide made, before a petition filed in bankruptcy by the debtor, is not a lien or security upon the property within the intendment of the second section of the Bankrupt Act of [August 19,] 1841, [5 Stat. 442,] c. 9.

[Cited in Stoddard v. Locke, 43 Vt. 574. See, also, In re Cheney, Case No. 2,636; Downer v. Brackett, Id. 4,043; Haughton v. Eustis, Id. 6,224; Peck v. Jenness, 7 How. (48 U. S.) 612. Contra, In re Reed, Case No. 11,640.]

10. Such attachment will not entitle the creditor to proceed to judgment in the suit, if the debtor has, pending the suit, lawfully and bona fide obtained his discharge in bankruptcy, and the certificate thereof is pleaded as a bar to further proceedings in the suit.

11. Where an attachment was so made, and a discharge so obtained and pleaded, it was held not to be necessary for the district court to order the attaching officer to deliver the property to the assignee, until the final decision of the state court, in which the suit was pending.

12. Such an order having been made by the district court, it was held, that it should be modified, so far as to permit the property to remain in the hands of the officer, until the further order of the district court, and to await the final action of the state court.

[See note at end of case.]

[Certificate from the district court of the United States for the district of New Hampshire.]

This was a case in bankruptcy, certified by the district judge to this court, under the bankrupt act of [August 19,] 1841, [5 Stat. 442,] c. 9, for a final decision.

The petition was as follows:

"George Huntington, of Walpole, in the district of New Hampshire, and Hope Lathrop of the same Walpole, respectfully rep-

resent: That the said George Huntington is the sheriff of the county of Cheshire, in said district, and that the said Hope Lathrop is one of his deputies. That on the 8th day of October, 1842, James [Jenness] Gage & Company, and a large number of the creditors of Philip Peck & Co., of Walpole, in said district, (said firm of Peck & Co. consisting of Philip Peck & William Bellows) caused certain writs of mesne process and of attachment to be issued against the said Philip Peck & Co. and delivered the same to the said Lathrop, or the said Huntington, for service, by virtue of which, they attached a large amount of real and personal property of said Peck & Co., and made returns of these precepts accordingly. That said writs were returnable and returned to the court of common pleas for said county of Cheshire, on the first Tuesday of April, 1843, at which term they were duly entered, and that said suits are now pending in said court. That the said Bellows and Peck, after the attachments were made, filed their several petitions before this honorable court to be declared bankrupts, and for the benefit of the act of congress, entitled an act to establish a uniform system of bankruptcy throughout the United States, were declared bankrupts accordingly, and, as your petitioners are informed, have since obtained a certificate of discharge. That at the October term of the said court of common pleas, 1843, Bellows and Peck severally filed their pleas of discharge in bankruptcy, in bar of further proceedings in said suits, and that it is the intention of the said attaching creditors, as your petitioners are informed and believe, to set forth the said attachments by way of replication to said pleas. That on the ——— of ———, 1843, Aaron P. Howland, the assignee of the said Bellows and of the said Peck, filed his petition before your honor, praying for an order on your petitioners for the reasons therein set forth, to deliver said property so attached and held by them as aforesaid, to him, the said Howland. That such proceedings were had upon the said petition, that on the 15th day of January, 1844, an order was issued by your honor, directing your petitioners to surrender and deliver over said property to said Howland, which order, on the 20th day of said January, was served by Albro Blodgett, a deputy marshal of said district, by delivering to each of your petitioners a copy thereof and his return thereon.

"Your petitioners further represent, that since the passing of said order they have been informed that a decision has been made in the superior court of judicature for the state of New Hampshire, that an attachment made precisely as the attachments were made in the case of Bellows and Peck is a lien or security valid by the laws of the state, and that it is saved by the proviso in the second section of the bankrupt act. Your petitioners, therefore, find themselves obliged either to obey said order, and thereby subject themselves to the hazard of suits which may be brought by the creditors, or to disobey the said order and thereby stand charged with the consequences which may ensue thereon. Your petitioners further suggest, that should the parties choose it, they have an adequate remedy by proceedings for a reversal of the decisions of the state court, by a writ of error to the supreme court of the United States. That your petitioners are officers of the state of New Hampshire, and their duty is to obey all precepts coming lawfully from their courts, and that they are bound by her laws and the decisions of her courts. Under all the circumstances of this case, your petitioners represent that they cannot, without great peril to themselves, obey the orders of this honorable court, passed on the 15th day of January, 1844, by delivering up said property, and they most respectfully pray your honor to rescind the order aforesaid, or to take such order thereon that your petitioners shall not be put in jeopardy of their persons or property by reason thereof."

At the hearing, it appeared that the superior court of New Hampshire had made a recent decision, in reference to the legal effect of an attachment of property under mesne process, in this state: whereupon the following questions were adjourned by the district court to the circuit court, for a decision: First. Whether an attachment of property, under mesne process, bona fide made before a petition filed in bankruptcy by the debtor, is a lien or security upon property, valid by the laws of New Hampshire; and thus within the proviso of the second section of the bankrupt act of August 19, 1841? Second. Whether any, and what relief shall be granted to the petitioners? [The court answered the first question in the affirmative, and rendered an opinion as to the kind and measure of relief proper under the circumstances.]

Mr. Goodrich, for petitioners.
Edwards & Bell, for the assignee.

STORY, Circuit Justice. It is not my intention to discuss the points involved in the first question adjourned into this court, in any manner whatever. So far as my judgment is concerned, they have been fully discussed, and fully decided by this court, in the former cases argued in Massachusetts. The attachment laws of New Hampshire differ from those of Massachusetts in no material respect—at least in no material respect affecting the present question. I consider the whole matter, therefore, settled in Ex parte Foster, [Case No. 4,960;] Parker v. Muggridge, [Id. 10,743.] In re Cook, [Id. 3,152,] and the more recent Case of Vose and others, [Vose v. Philbrook, Case No. 17,010,] since decided; and from those cases I feel

not the slightest inclination to depart. On the other hand, the more I reflect upon the doctrines stated therein, the more I am satisfied, that they conform to the true intent and objects of the bankrupt law of 1841, [5 Stat. 442,] c. 9; and I adhere to them with undoubting confidence. If they are to be overturned, it must be by some tribunal, whose decisions I am bound to obey.

The first question involves two distinct points. 1. Whether an attachment under the state law of New Hampshire constitutes a lien. Second. Whether it is such a lien as is within the saving of the second section of the bankrupt act of 1841, c. 9. The first point is, in my judgment, in the present state of things, a mere controversy about the meaning of words. That an attachment on mesne process is not a lien in the sense of the common law, I think very clear, for the reasons stated in Ex parte Foster, [supra.][2] That it is often called in Massachusetts and New Hampshire, a lien, may be admitted; with what propriety of language I do not inquire. In the elaborate opinion of the superior court of New Hampshire, in the case of Kittredge v. Warren, January term, 1844, in Grafton county, [14 N. H. 509,] it is decided to be a lien. I enter into no debate on that point with the learned judge of the state court. Assuming it to be a lien, it is a contingent conditional lien, connected with mesne process, and wholly dependent for its value and efficacy upon the plaintiff's obtaining judgment in his favor in the suit. The second point is of far more importance; and that is, whether it is a lien within the purview of the saving in the second section of the bankrupt act of 1841, c. 9. I was of opinion in Ex parte Foster, [Case No. 4,960,] that it was not, and for the reasons therein stated. I now retain the same opinion; although my present judgment does not, any more than that in Ex parte Foster, require me, with reference to the merits of the case now before me, to rely on that opinion. One suggestion made at the present argument on behalf of the attaching creditors is, that the attachment in this case is not a payment, security, conveyance, or transfer of property, made or given by the bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor a preference or priority over the general creditors of the bankrupt, within the provision of the enacting clause of the second section of the bankrupt act of 1841, c. 9. I agree to that; but this is so far from aiding the argument, that the proviso of the second section covers attachments on mesne process, that it may be strongly urged the other way, as solely intended to carve exceptions out of the enacting clause, and to guard against any application thereof to liens, mortgages, or other securities made or given voluntarily by the bankrupt, ejusdem generis, and that

[2] See, also, Ex parte D'Obree, 8 Ves. 82.

it could not be designed to include attachments upon mesne process, which are proceedings in invitum, and not ejusdem generis. But I do not dwell upon this topic, as of any decisive and absolute conclusiveness. The whole merits of the present case turn upon other considerations. First, whether the district court, sitting in bankruptcy, has a right to issue an injunction to prevent a creditor, who has made an attachment, from obtaining a priority of satisfaction out of the assets of the bankrupt, pending the proceedings in bankruptcy. Secondly, whether, if the bankrupt obtains his discharge pending the proceedings under the attachment, he has not a right to plead that discharge as a bar puis darrein continuance to further proceedings in such suit, and thus to defeat the creditor's right to a judgment. Now, if he has a right to the latter, the former would seem irresistibly to follow as a duty of the district court sitting in bankruptcy. Both of these points have been long ago decided by this court in the affirmative, in the case of Ex parte Foster, and others which followed it, [supra.] In respect to the right of the district court to issue such an injunction, it seems to me clear in principle; and it is a question of which that court had exclusive cognizance; and it is not a matter inquirable into elsewhere, whether the jurisdiction was rightfully exercised or not.

In respect to the other point, that a discharge in bankruptcy pendente lite was a good bar, and might be pleaded as such to the suit, until I saw the able and learned opinion of the superior court of New Hampshire, in Kittredge v. Warren, I confess, that it never occurred to me that it was a matter susceptible of any judicial doubt. I had long laid it up among those maxims of the law, which are uncontroverted and uncontrovertible. It is clear by the bankrupt act of [August 19,] 1841, [5 Stat. 443,] c. 9, § 4, that this was a debt of the plaintiff, provable under the bankruptcy, and equally clear, that if so provable, then the certificate of discharge operated to discharge the debt. If it discharged the debt and was pleadable as a bar, what ground is there to suggest that a judgment in personam can be rendered in a personal suit (for this attachment suit is no more) against the party? I profess myself wholly unable to comprehend how any judgment can be rendered against any person in a personal suit for a debt which is discharged; for the judgment declares the debt to be due from him, and directs a recovery accordingly. The record itself, upon such pleadings, ascertains that there is no debt; and yet the award of judgment is, or must be, that there is a debt recoverable from the party. If there had been no attachment of property, there could be no pretence to say that any judgment in a personal suit could be rendered against the party; for there could be no debt due or to be satisfied. What possible

difference can it make that there is an attachment, if that is to be a mere conditional or contingent security for the money, in the suit of a debt which is no longer a subsisting debt, or for a debt extinguished by operation of law? Suppose a release made by the plaintiff pendente lite is pleaded puis darrein continuance, is it not a perfect bar in that suit against any recovery? Such a release would be a complete bar to any suit in personam, even for the debt, although it were made with a reservation or saving of any accompanying mortgage or other fixed security, although the remedy to recover the latter might remain, and proceedings in rem be maintainable. Suppose, in the present case, no attachment had been made, and a mortgage had been given as collateral security for the debt, (which would be within the saving of the second section of the bankrupt act of 1841, [5 Stat. 442,] c. 9,) the certificate of discharge would clearly be a good bar to a suit in personam for the debt, although not to a suit in rem to enforce the mortgage. In an anonymous case in Lofft, 437, it was held, that a certificate granted, pending a suit, operated in the nature of a release. The case of Davis v. Shapley, 1 Barn. & Adol. 54, establishes also that a discharge in bankruptcy is not a mere personal discharge of the party, but a discharge of his after-acquired goods—thus demonstrating the complete effect of a discharge to prevent any judgment in personam against him or his goods.

The whole error in the argument consists in assuming two propositions as the basis on which it rests, neither of which is, in my judgment, maintainable, either upon the general principles of law, or the obvious purposes and provisions of the bankrupt act of 1841, c. 9. The first is, that the attachment, if it is a lien within the meaning of the second section of that act, becomes, in virtue thereof, not a contingent, or conditional lien or security, dependent for its efficacy upon a judgment being rendered in the particular suit, in favor of the plaintiff for the debt; but that it becomes de facto an absolute uncontingent and unconditional lien, which entitles the plaintiff to proceed to judgment in the same suit for the debt, although the debt is by the certificate of discharge barred as against the bankrupt, and there can be no general judgment rendered against him for the debt. The second is consequent upon the first, that the lien is equivalent to a mortgage upon the property, and entitles the plaintiff to the same rights and remedies that he would have upon a mortgage. Now I utterly deny that either of these propositions is maintainable at law upon any known principles; and it is incumbent upon the party, who asserts them, to establish their validity. In respect to the first, it is against the whole doctrine upon which attachments upon mesne process are founded, to hold that they are any thing

more than a mere conditional or contingent security for the debt sued for, provided, that the plaintiff is entitled to a recovery of the debt and does actually recover it in the suit. The bankrupt act of 1841, c. 9, if the lien be saved by the second section, saves only the lien as it is, and the remedy as it is. It does not make a lien absolute, which is only conditional or contingent. It does not change a lien which is founded upon mesne process into an absolute right. It does not supersede, or control, or vary any bar to the suit, which the law either protects or recognizes. Much less does it say, that if the debt is eventually discharged by operation of law, it shall still subsist for the purpose of being satisfied in that very suit, which is a mere proceeding in personam. The bankrupt act of 1841, [5 Stat. 444,] c. 9, § 4, declares that a "discharge and certificate, when duly granted, shall in all courts of justice be deemed a full and complete discharge of all debts, contracts, and engagements of such bankrupt, which are provable under this act, and shall be and may be pleaded as a full and complete bar to all suits brought in any court of judicature, whatever." This is, in substance, like the provision of the English bankrupt acts.[4] And there has never been any doubt, that, after the certificate of discharge has been obtained, it is a perfect bar to any personal action brought to recover any such debt. The certificate, if obtained pendente lite, has been as solemnly held to be a complete bar and a discharge of the debt in any personal action therefor—and may be pleaded as a plea puis darrein continuance. The authorities are full to the point, and are founded upon no reasoning peculiar to the British bankrupt laws, but turn upon the general principle, that any discharge of the debt pending the suit may be pleaded in bar of further proceedings; and that the suit becomes thereby ended. It seems scarcely necessary to cite authorities to the point. But Paris v. Salkeld, 2 Wils. 137, 139; Lovell v. Eastaff, 3 Term R. 554; Parker v. Norton, 6 Term R. 695; Tower v. Cameron, 6 East, 413; Harris v. James, 9 East, 82,—are directly in point, and fully recognize the general principle as beyond any controversy, although they turn for the most part upon other considerations. Mr. Tidd in his excellent work on Practice, (2 Tidd, Pr., 9th Ed., p. 847, c. 38,) states it as a settled doctrine; and Mr. Chitty gives us in his Pleadings the form of the plea, referring in his notes merely to such authorities as show its proper frame, (2 Chit. Pl., 3d Ed., p. 460.)[5] Since the statute of 21 Jac. I. c. 9, § 9, the question as to the effect of an attachment could not arise

[4] See 1 Deac. Bankr. (Ed. 1827,) p. 614, c. 14, § 7, and the act of 6 Geo. IV. c. 16, which, as to this point, does not differ from the prior laws.

[5] See, also, 1 Deac. Bankr. (Ed. 1827,) pp. 614, 617, c. 14, § 7.

in England; and there is no authority before that statute, which sustains the doctrine that the plaintiff under a foreign attachment could pursue his personal action to judgment after a discharge in bankruptcy pleaded puis darrein continuance. See Ex parte Foster, [Case No. 4,960.] I profess myself utterly unable to comprehend how or upon what principles a judgment can be rendered in a personal action for a debt against the defendant, when, upon the pleadings, the debt is admitted to be discharged by operation of law.

Then as to the second proposition. It is difficult to perceive what possible analogy there is between a mortgage on property, and a lien by attachment on mesne process, which ought to govern in this case. A mortgage vests a right of property in the mortgagee—a right positive, fixed, and present. It is in no just sense a contingent right of property; but a positive present transfer thereof. How can that be affirmed of an attachment upon mesne process? What property does the attaching creditor obtain in the property attached,—present, fixed, or vested? If the officer releases the property, or surrenders it to the debtor, or delivers it over to a bailee, can the creditor sue for it in an action of trover, or replevin, or in any other action in rem? There is no pretence to say, that any such doctrine exists or has been recognized by our courts. The case of property seized in execution, stands upon a much stronger ground; and yet the case of Giles v. Grover, 6 Bligh, 277, which underwent the most serious discussion by all the judges of England, establishes, that in such a case, the plaintiff in the execution acquires no property in the goods or lands seized on the execution. In truth, the officer, and the officer only, making the attachment or seizure in execution, acquires a special property therein, and he holds it only so far as the law authorizes it to be applied to the discharge of the judgment obtained by the plaintiff in the personal suit in which the attachment is made. Far different is the situation of a mortgagee of personal or real property. He has a present jus in re, and not a mere jus ad rem, and he may transfer that right to a third person. He may enforce that right against any person in possession of the property, or who subsequently acquires it tortiously as to him. His right in rem is positive, and he may maintain a suit therefor against any person, until that right is extinguished. Nay, in many cases at the common law, his right in rem continues as a subsisting right, although the debt for which it is given is extinguished or paid. In cases of a mortgage of real estate, we all know, that it is so at the common law, where the debt has not been extinguished until after condition broken. In cases of a mortgage of personal property (which is a pledge and more), the same rule applies. If the mortgage is not punctually redeemed at the prescribed time, the property, at law,

vests absolutely in the mortgagee, although in equity there is a right to redeem, as there is in regard to real estate. See Story, Bailm. § 287; 2 Story, Eq. Jur. §§ 1030, 1031, and the cases there cited. But then it is suggested, that a mortgage is not discharged or extinguished by the bankrupt act of 1841; but that it may be enforced, notwithstanding the discharge of the bankrupt from the debt. Certainly this is so under the express saving of the second section of the act; and it is unnecessary to consider whether it would have been so or not without that saving. But how may that mortgage be enforced? Certainly not by an action in personam for the debt; but by an action in rem, or by a bill in equity for a foreclosure. The proceeding in such a suit does not compel the bankrupt to pay the debt for which the mortgage was given; but simply forecloses his right to redeem, unless he shall voluntarily pay the debt. It acts, therefore, not at all in personam; but solely in rem. It is, in this respect, precisely like the case of a bottomry bond given by the master of a ship for necessary supplies and repairs. It creates a lien on the ship, which may be enforced against it, but it creates no personal obligation in the owner to pay the debt. Did ever any one hear of an action in personam for a debt, secured by mortgage, where a discharge under the bankrupt law was pleaded, to which it was a valid replication, that the debt was secured by mortgage, so as to oust the debtor of his bar in that suit, and entitle the plaintiff to move a judgment against him in that suit, to be satisfied out of the mortgaged property? That, I imagine, would be a perfect novelty in jurisprudence; and yet it is in effect what is sought to be attained in cases of personal suits against a bankrupt, where there is an attachment. The truth is, that there is no just analogy between attachments on mesne process, and mortgages of property, upon which any solid reasoning can be founded. They are wholly different in their nature, character, and operations, for different objects, and wholly diverso intuitu. They cannot be assimilated to each other by any effort of ingenuity or learning —at least, not in my judgment. We all know what are the ordinary proceedings in bankruptcy, in cases of mortgages. If the mortgagee chooses to come in under the bankruptcy, and surrender his mortgage for the purpose of a sale of the property, the property is sold, and he will be entitled to prove as a creditor for the surplus due him, beyond what the proceeds of the sale will satisfy. If he does not so come in, and the debtor has obtained a lawful discharge and certificate thereof, the mortgagee cannot proceed against him by a personal action for the debt. His sole remedy is to bring his bill for a foreclosure (if the assignee does not choose to bring a bill to redeem), making the proper persons parties, and he will then be entitled to a foreclosure, unless the money is paid by

the assignee or other party in interest, within the time prescribed by the court. But in case of a foreclosure obtained, the creditor must content himself with what the property is worth, and has no farther remedy for the debt against the person or other agent of the bankrupt. See 1 Deac. Bankr. (Ed. 1827,) p. 198, c. 9, § 6, etc., where the principal cases are cited. See, also, bankrupt act of 1841, [5 Stat. 444, 447,] c. 9, §§ 5, 11. I retain, therefore, the opinion, which I have already expressed in the case Ex parte Foster, and the other cases already cited. And with the greatest respect for the opinion of the learned court of New Hampshire, upon this point, in Kittredge v. Warren, I dissent from it toto animo. It has not relieved my mind from a single doubt. It has met the question in a manly and direct manner; and reasoned out the case, as far as it can be reasoned on that side, fully and fairly. It has failed to convince me; and I shall, therefore, act upon my own judgment, until the supreme court of the United States has instructed me otherwise.

It remains for me to say, what answers ought to be made in respect to the questions adjourned into this court. But before I proceed to state, what those answers should or might be, it may be proper to make a few observations upon the practice, which ordinarily regulates the action of the district court in cases of this sort. When a personal action, in which an attachment has been made on the writ, is pending in a state court, at the suit of any creditor, and the period has not passed at which the bankrupt is properly in court, and is entitled, if he obtains a discharge in bankruptcy, to plead it as a bar of the suit, in the nature of a plea puis darrein continuance, it becomes the duty of the court, upon his own application, or that of his assignee, by petition, to grant an injunction against the creditor, to stay further proceedings in the suit until the further order of the court. If the creditor does not reside within the district, the injunction should or may be prayed against him, and his agents and attorneys within the district, to stay further proceedings; and in such a case, a service of the injunction upon such agents or attorneys will be a service upon their principal, and bind him as well as them, personally. If, notwithstanding, the creditor, or his agents or attorneys, should, without the leave of the district court, proceed to take further steps in the cause, it will be a breach of the injunction, for which they will be liable to be committed for a contempt. If no discharge is obtained by the bankrupt, then the creditor may, by petition, apply to the district court to dissolve the injunction; and, if dissolved, the creditor may then proceed to perfect his attachment by judgment and execution. If the bankrupt obtains his discharge, and pleads it as a bar, and the creditor means to contest its validity, as by replying fraud, or that the debt is not other-

wise within the discharge, then the creditor should apply to the district court for leave to proceed in the cause and to try the validity of the discharge by a trial in the state court, which is granted as a matter of course, upon suitable proof and affidavits. If the validity of the bar is established by the verdict of the jury, that, of course, ends the right to proceed in the suit, unless a new trial is granted. If the discharge is avoided for fraud, or other matter in pais, then, of course, it is no bar, and there is an end of the defense, unless a new trial is granted. But, if the validity of the discharge, as such, is not contested; and the state court should, as in the case of Kittredge v. Warren, [supra,] upon a demurrer, hold the discharge invalid as to the property attached, I have no doubt, that it would be the duty of the district court to grant an injunction against the creditor, his agents, attorneys, and the sheriff holding the attached property, to restrain the creditor from proceeding to judgment; or, if he has proceeded to judgment and execution, to restrain the sheriff from levying on the property on the execution; and, if the property has been sold by the sheriff, to compel him to bring the proceeds into court. And it will be no excuse or justification to the sheriff, after notice, that he has paid over the proceeds to the creditor, or to his agents or attorneys. And the proceeds may be followed by the proper district court into the hands of the creditor, and his agents and attorneys, wherever he or they may reside. Such I do not scruple to affirm is, and should be, the practice. It would be an utter renunciation of the rightful authority and jurisdiction of the courts of the United States to allow any creditor to avail himself of any unjust and unlawful advantage, merely because his suit is depending in a state court. The laws of the United States are, to the extent of the constitutional limits, paramount to the authority of those of the states. The courts of the United States are the appropriate expounders of the laws of the United States; and are not bound to follow the exposition of these laws by the state courts, unless so far as they approve themselves to their own judgment.

Such being my views with regard to the appropriate modes of proceeding in cases of this nature, it seems to me, that the order of the district court, directing the sheriff and his deputy to deliver up the property, might involve them in some embarrassment and a double responsibility, which might be avoided by a somewhat different procedure. I understand, indeed, that already an injunction has gone against the plaintiffs in the various suits in the state court referred to in the petition. But as it is neither suggested, nor stated upon the case adjourned into this court, no notice of it can be here judicially taken. But this much I may say, that if such an injunction has been awarded, it is not competent for the credit-

ors to take a single step in their suits in the state court, unless under the direction and order of the district court; for otherwise it would be a breach of the injunction.

The answers which I shall direct to be sent to the district court, upon the adjourned questions, are as follows:—as to the first question. It is the opinion of this court, (1). That an attachment of property under mesne process bona fide made before a petition filed in bankruptcy by the debtor, is not a lien or security upon the property, (although valid by the laws of New Hampshire), which is within the true intendment of the proviso of the second section of the bankrupt act of [August 19,] 1841, [5 Stat. 442,] c. 9. (2). If it were, it would not entitle the creditor to proceed to a judgment in the suit, in which the attachment is made, if the debtors have, pending the proceedings, become bankrupts under the act, and have, pending the proceedings, lawfully and bona fide obtained their certificates of discharge from their debts, provable under the bankruptcy, and the same is pleaded as a bar to further proceedings in the suits.

As to the second question. It is the opinion of this court, that, in the present state of the proceedings and pleadings in the suits pending in the state court, as stated in the petition, justice does not at present require, that an injunction or order should be awarded by the district court, directing the petitioners to deliver up the property attached, to the assignee of the bankrupts; and if, as suggested, such an injunction or order has been awarded by the district court, it ought to be modified, so far as to permit the same property to remain in the hands of the petitioners, until the further order of the district court, and to await the final action of the state court in the said suits. And that in case the state court, not contesting, but admitting, that the discharge of the bankrupts was obtained bona fide and without fraud, and as such is valid as a discharge from the debts provable under the bankruptcy, should nevertheless proceed to award judgment for the plaintiffs in the said suits for their debts so provable, on account of such attachments therein, then that such judgment ought to be treated as a nullity by the district court, and as not binding therein. And that, therefore, it will become the duty of the district court, upon the petition and application of the assignee of the bankrupts therefor, to direct an injunction to the plaintiffs in such suits respectively, (if such injunction has not already issued,) prohibiting them respectively from levying any executions on the said judgments, or any of them, upon the property attached in the said suits; and at the same time to direct an injunction to the petitioners, prohibiting them or either of them from proceeding to levy the same executions on the property so attached, or any part thereof, but to deliver up the same forthwith to the assignee of the said bank-

rupts, to be distributed as a part of the assets of the said bankrupts. And if any of the said executions shall have been by them levied upon the said property attached, then to pay the moneys raised thereby into the said district court. And in case of the disobedience of such order or injunction by the said plaintiffs, or the petitioners, then the district court ought to proceed to enforce obedience thereto, as in other cases of violation of injunctions.

[NOTE. Reversed by the supreme court in Peck v. Jenness, 7 How. [48 U. S.] 612, on the ground that the attachment constituted a lien, within section 2 of the act of 1841, preserving all liens which may be valid by the laws of the state respectively.]