SUSAN A. GRAHAM v. F. M. BOYNTON AND ANOTHER.

1. *Quære:* Can a partnership firm be brought within the jurisdiction of a court by attachment of the individual property of one of the partners ?

2. An action of debt was brought in a State court of Texas against a mercantile firm conducted in an adjoining State, of which the several members of the firm were residents. To obtain jurisdiction of the defendants, an attachment was sued out and levied on land in this State, which was the individual property of D., one of the partners. Subsequently the plaintiffs suggested the death of D., the defendant who owned the attached property, and dismissed their suit as to him; and by order of the court the cause proceeded against the surviving partner as the representative of the firm. No personal service had been had on D., nor was the suit revived against his personal representative. Judgment being rendered for the plaintiffs, the attached property was sold by the sheriff under final process, and was bought by G. The present suit is trespass to try title, brought by G. to recover possession of the land from a party who bought it from D. after the levy of the attachment, and while the original suit was still pending against D. *Held*, that after the death of D. and the dismissal as to him, no further proceedings in the original suit could have been legally taken against his individual property; and, therefore, the sheriff's sale conveyed no title to G., the present plaintiff. See the opinion of the court for a review of numerous decisions in other States upon the questions presented in this case.

APPEAL from Rusk. Tried below before the Hon. J. B. Williamson.

A clear statement of the facts is given in the opinion of the court.

The record of the suit of McKleroy & Bradford against Dunn, Yates & Richie was introduced in evidence by the plaintiff in the present case. It showed that answers for Dunn, Yates & Richie were duly filed by attorneys.

The appellee Boynton was a tenant of H. M. Cushman, who came in as a co-defendant, and who is one of the appellees.

*W. W. Morris*, for the appellant.—The record shows that the appellant proved a direct title, free from irregularity, by the levy of the attachment   The lien, perfected by a final judgment against Yates as the surviving partner of Dunn & Yates for the debt due, and condemning the property to be sold under an order of sale, which was executed, and plaintiff became the purchaser as shown. Admitting irregularity in the proceeding (which is not the fact), yet the appellant is protected in her title.

The judgment is on personal service, and concludes all parties and privies. It recites that the parties appeared by their attorneys, and the answers filed, and service accepted by Yates of the petition, put this matter beyond question. (Campbell v. Wilson, 6 Texas, 739, very full to the point.)

However erroneous the judgment may be, if it be not void, the title of a purchaser under it is valid. (Seguin v. Maverick, 24 Texas, 526.)

If a court have jurisdiction of the person of the defendant, the judgment imports absolute verity, and precludes further examination unless fraudulently obtained.

Thus the judgment of Bradford, surviving partner, etc., against A. A. Yates, surviving partner of Dunn & Yates, for the debt in controversy, and adjudicating the lien of the attachment as shown, is conclusive on the parties, and cannot be collaterally impeached ; and the fact that an appeal was pending in the Supreme Court (and no supersedeas) did not incapacitate the parties from dealing with the subject matter of the suit. (Wilson v. Hopkins, 27 Texas, 637.)

The fact that the levy of the attachment was of Dunn's individual property can make no difference. The moment it was seized for a partnership debt on the sixth of November, 1858, from thence it became in legal contemplation, for the payment of partnership debts, partnership property. "In equity all partnership debts are to be deemed joint and several, and consequently the joint creditors have an election to proceed in equity against the estate of the deceased partner, whether the survivors be insolvent or bankrupt, or not." (Story on Partnership, § 362; see also note, opinion of Sir John Leach, Master of the Rolls.)

This being the law as to a deceased partner, it applies much more strongly to the property of a living partner. Our courts exercising both common law and equity jurisdiction, renders the doctrine quite applicable.

Having shown the right to levy on Dunn's individual property (in fact there is no proof of partnership effects), it becomes material to show the power and effect of such attachment levy on the rights of the parties.

"When an attachment is served, a lien on the property attached is created, which nothing subsequently can destroy but the dissolution of the attachment. It is beyond the power of the State Legislature to pass an act destroying it." (Drake on Attach., § 224.)

The record shows that the suit regularly progressed from its inception to judgment.

It is true that Dunn died pending the suit, but this neither abated the action nor the attachment. Paschal's Digest, Article 4, expressly provides that, in suits like this, on the death of any one or more of the defendants, the suit shall not abate, but continue in the name of the survivor. In this case the suit, on the suggestion of the death of Dunn, was by the court ordered to proceed in the name of Yates, surviving partner.

It is admitted that Drake on Attachment discusses the conflict of authorities as to whether the death of a defendant in attachment pending the suit dissolves the attachment. That author says: "The decisions on this subject are few, and mostly so connected with local statutes as to have little general applicability." (Drake on Attach., § 433.)

It would seem that by analogy the rule as to other liens is the most simple and just, viz., to hold the property levied on to satisfy such judgment as may be obtained.

This doctrine in its strongest light is not applicable to the case at bar. The author's views are predicated on a suit that abates by death. In the case under consideration, the suit did not abate, but on the suggestion of death was by the law upheld, and the court ordered it to progress in the name of the survivor, and against the surviving partner, defendant, which it did to judgment. Under this state of facts, how could the doctrine of abatement be applied? Could the lien acquired by the attachment be abated, and the suit remain revived as to the surviving defendant, when the debt is joint and several? No legal precedent or analogy is known for such a proceeding. In legal contemplation this was a living suit from inception to judgment. (Paschal's Digest, Art. 4.)

The act of Dunn in the sale of the property levied on seems conclusive beyond doubt as to the appellant's right under the attachment lien.

On the sixth day of November, 1858, the attachment was levied on the lot in question as the property of Dunn; on the twenty-second of October, 1859, Dunn sold the property to M. C. Turner; on the second day of October, 1863, M. C. Turner sold to H. M. Cushman, landlord defendant in this case. The principal ground taken in the court below against the appellant was, that Dunn's heirs not being made parties, the judgment was void, and the sale under it conferred no title. This position has neither reason nor authority for its assertion. What right had Dunn's heirs to be made parties to the suit? Dunn sold the lot after the levy, and (of course) before his death. He had a right to do it, which is not contested, and his heirs have not a particle of interest in the matter in controversy. Yet the plaintiff is turned out of court to pay a bill of cost after having purchased the property and paid fairly for it at a judicial sale, on a regular condemnation of the property levied on. M. C. Turner purchased the lot of defendant Dunn after the levy of the attachment; the property passed from Dunn to Turner, and from Turner to defendant Cushman, incumbered with the attachment lien. Defendant Cushman stands precisely in the shoes of Dunn, charged with full notice of the incumbrance. He is a purchaser *pendente lite*.

In Tuttle v. Turner, 28 Texas, 760, the rule is laid down thus: "A purchaser of land pending an attachment upon it, is charged with notice of the attachment lien and the rights of attaching creditors in the land from the date of the levy, and can hold only such rights against the creditors, in the land, as his vendor could have maintained; and the fact that the purchaser had

no actual notice at the time of the purchase that the land had been attached, is immaterial."

Surely this must be conclusive as to any right of Dunn's heirs to be made parties to the attachment suit.

To sum up, it is insisted,—

1. That the appellant, Mrs. Graham, shows a title under a valid judgment, *in personam* and *in rem*, the latter being good without personal service, and authorizing the sale on a joint and several debt against Dunn. (Campbell v. Wilson, 6 Texas. 391; Green v. Hill, 4 Texas, 465.)

2. In that suit the matters of service, validity of the attachment and levy, etc., were litigated and settled, and are conclusive on parties and privies, and cannot be collaterally drawn in question in this action on a title emanating from said judgment, as seems to have been determined by the court below, who, by consent, tried the cause on the law and facts. (Phil. Ev., 320, 333; 1 Greenleaf's Ev., § 525.)

3. It cannot be questioned that the defendants are privies in estate to the judgment rendered in the attachment suit, condemning the lot to be sold.

4. That at the date of the sale under the attachment levy, said judgment was unsatisfied and uncompromised, and in full force.

*Wm. Stedman*, for the appellees.

WALKER, J.—This is an action of trespass to try title, brought by the appellant against the appellees, in the district court for the county of Rusk, at the October term, 1870.

The question for our determination is as to the validity of a sheriff's deed, through which the appellant claims title.

The property in controversy is a house and lot in Henderson. The case was tried by the court, a jury having been waived. The facts from which we are to determine the law of the case are substantially these: McKleroy & Bradford, partners doing business in the city of New Orleans, sued the firm of Dunn & Yates, at the November term, 1858. The firm was composed of Dunn, Yates, and Ritchie, who were doing business in the town of Shreveport, in the State of Louisiana, at which place the partners severally resided. Suit was brought on an open account, and the balance claimed by the plaintiffs was between eight and nine thousand dollars.

An attachment was sued out and levied on the house and lot now in controversy, which is admitted to have been the individual property of Uriah Dunn, one of the partners of the firm of Dunn & Yates; and this, the appellant's attorney says, was because of the "non-residence" of the defendants.

Thus, we suppose, it was intended by a proceeding *in rem* against the property of an individual partner, to bring the firm within the jurisdiction of the court.

Whether this could be done, to give the court jurisdiction of the firm of Dunn & Yates, is a question we will leave open to discussion, not finding it necessary to the decision of this case that the question should be herein determined. Subsequent to the levying of the attachment, Dunn sold the land to M. C. Turner, and conveyed it by a deed dated October 22, 1859. Turner subsequently deeded the property to H. N. Cushman, and this deed bears date October 2, 1863; Cushman defends as the landlord of Boynton. Both parties deraign title through Dunn.

In order to arrive at an understanding of the appellant's title, our attention must be directed to the original

suit between McKleroy & Bradford and Dunn & Yates. Dunn and McKleroy both died during the pendency of the suit ; their deaths were suggested.

On the ninth day of December, 1868, the defendant, A. A. Yates, filed a plea in abatement. On the same day an exception to the plea was filed, which exception was sustained by the court, and Yates excepted to the ruling of the court; whereupon, Bradford, the surviving plaintiff, as the record tells us, abates his suit as to co-plaintiff W. H. McKleroy, and co-defendants Uriah Dunn and Vincent Ritchie, and the court directed that the suit be proceeded in in the name of Joseph H. Bradford, surviving partner of McKleroy & Bradford, plaintiff, and A. A. Yates, surviving partner of Dunn & Yates, defendant.

The cause was submitted to a jury, who found a verdict for the plaintiff in the sum of $15,933.35 ; on which verdict judgment was entered, execution issued, and the property was sold, and purchased by the appellant.

Was the estate of Dunn so encumbered by the attachment on the twenty-second of October, 1859, that his deed to Turner conveyed no title ? Suppose he had afterward paid the debt to McKleroy & Bradford, or that the attachment had been dissolved for want of a bond ; or suppose he had entered special bail, or the attachment had been quashed for any irregularty, then certainly the deed to Turner would have been good for whatever interest Dunn had in the property. But we have not reached the question. What became of the attachment against his individual property, upon Dunn's demise ?

This question is not entirely free of all doubt ; the decisions in the different States upon this point have been so governed by State laws that it is somewhat dif-

ficult to ascertain what would be the ruling of the courts (of some of the States at least) were it presented to them as it now is to us.

We have had recourse to the authority of text writers and other authorities. In Davenport v. Tilton, 10 Metcalf, 320, it was held, that upon the appointment of an administrator, who takes the property of the deceased as trustee for the creditors, all attachments on mesne process are dissolved. In Pennsylvania, in the case of Fitch v. Ross, 4 S. & R., 557, it is held, that the death of the debtor dissolves an attachment, if it occur before final judgment, and he shall not have put in special bail. In the case last referred to, the court say: "If these proceedings were in all respects *in rem*, they would not abate by the death of the defendant; for some purposes they are to be so considered."

The same question was decided in Pancost v. Washington, 5 Cranch, C. C., 507. In Collins v. Duffy, 7 Louisiana Annual, 39, it was decided that an attaching creditor acquires no lien upon the property of his deceased debtor.

In Tennessee (3 Humphreys, 139, 6 Ibid, 157,) and Missouri (7 Missouri, 421, 13 Ibid, 446,) the doctrine is laid down, that the death of the defendant, *pendente lite*, dissolves the attachment.

In Tennessee the doctrine would seem to be that the suit may be revived and proceeded in against the administrator, but no order can be made for the sale of real estate without also making the heirs parties.

The doctrine is perhaps more strongly stated in the Missouri cases, and it is further held that if the death take place after judgment without personal service, the property only being bound, the same result would follow.

The same doctrine is laid down in South Carolina.

(Kennedy v. Raguet, 1 Bay, 784; 1 Treadway, 83.) In New York a contrary doctrine is held, with the condition that the action must be such as would survive against the representative.

In this case there was no personal service upon Dunn, and instead of any attempt to revive the suit against the administrator, the plaintiff, by a formal announcement made upon the record, dismissed his suit as to Dunn. Certainly there could be no further action taken in this suit against the individual property of Dunn.

The case of Robertson against Paul, 16 Texas, lays down a rule against which we have admonished the profession, but we may safely apply the principle therein enunciated to cases like the one at bar. It is a fact well known to the profession that Justice Story, in deciding cases under the general bankrupt act of 1841, stoutly maintained that an attachment was not a lien in the sense of the common or maritime law, or law of equity, but only a contingent and conditional charge until the judgment and levy; and therefore was dissolved by the defendant's bankruptcy. (See 2 Story, 131, and 3 Story, 428, cited in the notes to par. 435, Drake on Attachment.) But this opinion, though carrying with it great weight, has never been acquiesced in by the profession, but has been strongly opposed by the ablest jurists of the country.

We find a forcible argument in the brief of appellees' counsel, drawn from the following premises:

A deed by one partner to the real estate of the firm, though he attempt to convey the entire interest of all the partners, will be good only for his own interest. (Story on Partnership, par. 188.) Is it possible, then, for a creditor of the firm, who takes his judgment only against the surviving partner, to proceed to sell under

46—XXXV

execution the individual property of a deceased partner, against which he has no judgment *in rem*, or against whom he has no judgment *in personam?*

We are clearly of opinion that such a proceeding would be void, and a purchaser at execution sale would take no title whatever; and this brings us to the final disposition of the case.

The judgment of the district court is affirmed.

AFFIRMED.