### FINLAY v. ERVIN, Attorney General, et al.

Circuit Court, Calhoun County.
March 8, 1952.

J. Kenneth Ballinger, Tallahassee, for plaintiff.

Richard W. Ervin, Attorney General, John A. Madigan, Jr., Assistant Attorney General, both of Tallahassee, Mercer P. Spear, State Attorney, Panama City, for defendants.

IRA A. HUTCHISON, Circuit Judge.

This is a suit for a declaratory decree, the purpose of which is to adjudicate the validity of the Election Code, chapter 26870, laws of Florida 1951, more particularly subsections (4) (a) and (7) of section 99.161 F. S. A., which are as follows:

(4) *Campaign treasurer in charge of funds; time limit.*—

(a) No contribution or expenditure of money or other thing of value, nor obligation therefor, shall be made, received, or incurred, directly or indirectly, in furtherance of the candidacy of any candidate for political office in the State of Florida except through the duly appointed campaign treasurer or deputy campaign treasurers of the candidate. * * *

(7) *Written authorization of expenditure required.*—

No expenses shall be incurred by any candidate for election or nomination to political office, or by any person, corporation, or association in his behalf, or in furtherance or aid of his candidacy, unless prior to the incurring of the expense a written order shall be made in and upon the form prescribed, and signed by the campaign treasurer of the candidate authorizing the expenditure, and no money shall be withdrawn or paid by any campaign depository from any campaign fund account except upon the presentation of the written order, so signed, accompanied by the certificate of the person claiming the payment, which certificate shall state that the amount named in the order, or such part thereof as may be claimed, naming the amount claimed, is justly due and owing to the claimant, that the order truly states all of the purposes for which the indebtedness was incurred, and that no person other than the claimant is interested, directly or indirectly, in the payment of the claim, and unless an order for payment in and upon the form prescribed, and signed by the campaign treasurer or deputy treasurer, is presented to the campaign depository; provided that any such authorization may be issued by the campaign treasurer to the candidate for traveling expenses still to be incurred. The order authorizing such expenditure, the certificate, and the order for payment shall be on the same piece of paper.

The plaintiff, a publisher of a weekly newspaper in Florida, requests the court to adjudicate, by a declaratory decree, his rights in the following particulars:

1. Does the plaintiff, as publisher of a legal newspaper, have a right to accept money or checks in payment of political advertising in furtherance of the candidacy of a citizen from any person other than the candidate or his campaign treasurer?

2. Does a citizen of Florida have a constitutional right to buy space in a newspaper to print his views in furtherance of the candidacy of an individual?

3. Does the publisher of a newspaper have a constitutional right to give or sell space in his newspaper to a candidate for public office or other citizen to express his views in the furtherance of the candidacy of an individual for public office?

4. Does the plaintiff, as a citizen, have a constitutional right to freely write his views about any candidate for public office in a newspaper other than his own, if the publisher is willing to sell or to give him the space?

5. Does the plaintiff, as publisher of a legal newspaper, have a constitutional right to mail or otherwise distribute copies of his newspaper containing expressions of his opinion of a candidate for public office, without offending the provisions of chapter 26870, Laws of Florida?

6. Does the plaintiff, as publisher of a legal newspaper, have a constitutional right to accept and publish as paid advertising the expression of opinion or the views of non-residents of Florida for or against the candidacy of any individual for state or national office?

7. Does the plaintiff, as publisher of a legal newspaper, have a constitutional right to accept and publish paid advertising in opposition to any candidate for public office, where such political advertising is not submitted with the forms required by the Election Code aforesaid?

The issues in this suit raise questions of the right of an individual and of a publisher of a newspaper (but not of a candidate) freely to write and publish their opinions under section 13 of the Declaration of Rights in the Florida constitution which provides that

"Every person may fully speak and write his sentiments on all subjects, being responsible for the abuse of that right, and no law shall be passed to restrain or abridge the liberty of speech or of the press ... "

and raise the further question whether the above quoted sections of the acts of the 1951 legislature would restrain or abridge liberty of speech and press if enforced.

Litigation which, as this suit does, calls into question the constitutionality of an act of the legislature, imposes one of the greatest of obligations on a court, for it is the power of a co-ordinate branch of the government which is brought into question — and to decide that the legislative branch has exceeded its power under the constitution is itself an exercise of power of such importance as not to be undertaken lightly or rashly— and not in any case where it cannot be made to appear plainly and affirmatively that the legislature has so exceeded its power that its acts are in conflict with restraining provisions of the constitution. If there is a reasonable doubt it must be resolved in favor of the challenged law. Judge Marshall in Marbury v. Madison correctly said — "The opposition between the constitution and the law should be such that the Judge feels a clear and strong conviction of their incompatibility with each other."

Before a book could be published in England prior to 1688, the date of the English Revolution, permission had to be obtained — that permission was called an *imprimatur*. In France forty *censors* granted similar permission. *Imprimaturs* were abolished and the press was said to be free. Thomas Paine, a renowned pamphleteer who wrote many pamphlets to arouse the people in aid of the cause of the American Revolution, declared that the press is the tongue of the eye and is placed "exactly as in the case of the human tongue. A man does not ask liberty to say something he has a mind to say, but he becomes answerable for the atrocities he may utter."

The evils resulting from rigid controls in England and France — having to obtain an *imprimatur* or submit to *censors* — prompted the inclusion in federal and state constitutions of provisions guaranteeing liberty of speech and of the press.

Judge Story said —

> As the Constitution is the supreme law of the land, in a conflict between the laws either of Congress or the states, it becomes the duty of the judiciary to follow that only which is of paramount obligation. This results from the very theory of a republican constitution of government; for otherwise the acts of the legislature and executive would in effect become supreme, and uncontrollable, notwithstanding any prohibitions or limitations in the Constitution, and usurpations of the most unequivocal and dangerous character might be assumed without any remedy in the reach of the people. 3 Story 428-9.

The first section of the statute under question provides that no expense shall be incurred by any person in aid or on behalf of a candidate except upon written order of a campaign treasurer,

etc. The purchase of a postcard to write to a friend, making payment for a telegram, paying a printer to print posters announcing a meeting, hiring a hall in which to speak one's convictions in an effort to attract others to one he believes to be worthy of their suffrage, the expression of one's views in a signed advertisement in a newspaper — none of these things may be done without subjecting oneself to criminal prosecution unless a written *imprimatur* is first procured. In other words, without such approval the publication is criminal — with it, it becomes lawful.

It is clear to this court, to the extent of its limited capacity, that as to the questions posed by the plaintiff, as set out herein and numbered 1 to 7 inclusive, the answer of the court must be and is in the affirmative to each of said questions. The questioned law, as to the acts and the particulars raised by said questions, is in conflict with and repugnant to the provisions of the constitution guaranteeing liberty of speech and press, and it is hereby so ordered, adjudged and decreed.