R. M. WATSON v. MILTON GOLDSTEIN.
FIRST NATIONAL BANK OF MINNEAPOLIS, GARNISHEE.
LINA GOLDSTEIN, INTERVENER.[1]

December 7, 1928.

No. 26,885.

[1]Reported in 222 N. W. 509.

*William E. MacGregor,* for intervener-appellant.
*Shaw, Safford, Putnam & Shaw,* for plaintiff-respondent.

WILSON, C. J.

The intervener appealed from an order denying her motion for a new trial.

Plaintiff, a judgment creditor of defendant, garnisheed the bank, which disclosed that at the time of the service of the garnishee summons it had in its possession a promissory note for $13,000 dated September 21, 1922, given by one Durkee and wife to defendant together with a real estate mortgage securing the same. The mortgage was recorded. The note was indorsed by defendant to the bank, and the mortgage was assigned by him to it by a written

assignment as collateral security to a note given the bank by defendant and the intervener but which had been paid at the time of the disclosure. The loan was also secured by a Clifford note and mortgage given direct to and owned by intervener, the mother of defendant. There was other collateral owned by defendant who in fact paid the bank. The loan from the bank was for him.

The intervener filed a complaint in intervention claiming to be the owner of the $13,000 note and mortgage. This was denied by plaintiff's answer. The court found that defendant was the owner.

■ Prior to 1920 one Irwin S. Goldstein, a brother of defendant, died leaving personal property of $75,000 and 32 pieces of real estate to his mother, the intervener, who put the management of her property in defendant's hands. The parties employed a bookkeeper, who kept two sets of double entry books, one for defendant, and one for intervener. Each set consists of two books, a journal and a ledger. The ledgers are loose leaf but the journals are not. The journal entries were made when the particular transactions occurred. In consideration of defendant's looking after intervener's property and keeping her books, she agreed orally that defendant might use her money as he collected it from time to time. He was not required to pay interest. Accounts of such borrowings were kept in the books, and from time to time beginning in 1920 defendant transferred to intervener securities to reduce his indebtedness. There were three instances in 1921, perhaps seven in 1922 and some in 1923. Such securities sometimes were made to run to defendant, who assigned them to intervener, and others ran direct to her. In either event appropriate entries were made upon both sets of books.

On December 27, 1922, the Durkee note and mortgage were transferred by defendant to intervener upon their respective books, and it was definitely agreed that she was to be the owner thereof. At that time defendant owed intervener more than $12,700, the then face value of the note and mortgage, and he received credit for $12,700. Intervener knew that the note and mortgage were then at the bank and held as collateral. There was no written assignment of the mortgage nor indorsement upon the note, both of which

remained in the possession of the bank. After the transfer interest and principal payments were made monthly and entered in the books of the intervener, although, like other money which defendant handled for his mother, it was deposited in his bank account from which he paid his mother's bills. She got the money.

In every instance subsequent to the transfer of a security on the respective books intervener has received the income and has been charged with the expense, if any, of maintaining the particular property. Intervener's income tax has been calculated upon these books, and since 1922 she has accounted in her return for the receipts of the Durkee note and mortgage.

From time to time prior to December, 1922, intervener demanded that defendant turn over to her assets which he acquired, at least in part, through the use of money borrowed from her. This was done. Defendant is a builder, and the Durkee note and mortgage were given to get money to pay for construction work. Intervener personally inspected the property and furnished defendant the money with which to make this particular loan.

The foregoing facts are disclosed by the books, the testimony of the defendant, the intervener, and their bookkeeper; and they are uncontradicted and unimpeached, unless by the facts and circumstances now to be stated, which it is urged present a question of fact, to-wit:

Defendant on October 19, 1922, assigned the note and mortgage to the bank and indorsed the note to the bank as collateral to a loan from the bank for his benefit. We see no significance to the conceded transfer by defendant to the bank. That was a completed act before the transfer to intervener, who was a party to the loan from the bank. It really bears no relation to the present controversy. Defendant made entries in his journal of payments made by Durkee after December 27, 1922, but they were necessary in keeping the accounts of money coming into his hands. These payments were properly entered upon intervener's books and she received the money. Defendant handled intervener's money for his own use without paying interest. The agreement was that he need not pay

interest because he rendered services. But the fact that the mother did not exact interest from her son holding her confidence is of little probative value.

There are in evidence several financial statements made to the bank by defendant for himself and intervener. They are not important. Exhibits 5, 6, 7 and 9 were made before September 22, 1922. Exhibit 10 is a crude financial statement for intervener made October 31, 1923. It does not mention by name the Durkee note and mortgage nor any other one. It shows "mortgages and contracts receivable, $154,703.00." There is nothing to indicate that the Durkee paper is not included. Exhibit 4, defendant's financial statement of October 31, 1923, made several months before plaintiff had a cause of action, lists "mortgages and contracts receivable, $7,756.05." No more. The Durkee paper then amounted to about $11,700. It could not have been included in the lesser amount, and the undisputed testimony is that the $7,756.05 was made up of four specific items. No notice was ever given to the bank or Durkee that intervener and not defendant owned the note and mortgage. The parties were under no duty to notify either the bank or Durkee as to the transfer, and a failure to do so is of no consequence.

After the garnishee disclosure defendant executed an assignment dated December 27, 1922, but which was made, executed, acknowledged and recorded on November 23, 1925. No one denies this or makes any effort to deceive anyone by claiming it to be otherwise. It was apparently intended as some written evidence of the oral agreement. Possibly the parties then thought there was some necessity for it. It was made after this controversy arose, and no one claims any advantage because of this paper. Neither its existence nor its making carries any moral turpitude or bad faith. Intervener testified at the trial in 1927 on cross-examination that at the time the Durkee note and mortgage were transferred to her she saw them in the safety deposit box in the Irwin-Dick building. Relative to this she was mistaken because they were then in the bank as collateral to the note which she had signed. She knew this. She knew counsel and others knew it.

Certainly she could not have intended to say the papers were in the deposit box when all concerned knew they were in the possession of the bank. The character of the alleged falsehood and the futile success attained thereby practically destroy the suggestion of untruthfulness. She qualified her statement by saying in answer to whether she saw the Durkee mortgage: "I can't remember any specific one, because there were a number of them among others that I had." Nor did she assume to fix with certainty the time when she thought she saw the Durkee mortgage. She said, "I am not positive whether it was October, 1922, or January. I can't remember the particular time." She may have seen it before it was delivered to the bank on October 19, 1922. The statement does not carry the indicia of wilful falsehood; nor does it have any tendency to refute the books or the testimony of other witnesses. Indeed, if we could say that the jury might reject her testimony because of this one statement, there remains sufficient evidence to sustain her claims. Plaintiff's cause of action against defendant arose in 1924, and this transaction could not have been made to escape therefrom.

We are of the opinion that the foregoing circumstances upon which respondent relies are insufficient to destroy intervener's case, established by positive testimony, books and circumstances. Subjecting these circumstances and facts to any reasonable construction most hostile to intervener, they fail to show, upon the record, any real inconsistency or improbability relative to her evidence. They simply fail to impeach. The record fails to show anything inherently improbable or inconsistent in the claims of the intervener. This transaction was had long before plaintiff had a cause of action, and while somewhat unusual it has every earmark of actuality. The books are convincingly real and honest. Their fabrication seems impossible. This was one of several similar transactions and in the regular course of dealing and at a time when there was no motive for subterfuge. Intervener's unimpeached, positive and uncontradicted testimony, not being inherently improbable and not discredited by any facts or circumstances, compels a finding to the effect that the transaction was had as she claims.

O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, and cases there cited.

■ Does the agreement constitute a valid transfer? The property involved is personal. It is only from the standpoint of the personal property involved that plaintiff prosecutes this proceeding. The debt, evidenced by the note, is the property, and the mortgage is merely an incident thereto. A note may be transferred without indorsement. G. S. 1923, § 7092. Like a mere debt or book account, it may be transferred orally. The terms of the oral agreement, supported by the book entries, as between the parties thereto, effectually transferred the title to the intervener. Murphy v. Bordwell, 83 Minn. 54, 85 N. W. 915, 52 L. R. A. 849, 85 A. S. R. 454; Burton v. Gage, 85 Minn. 355, 88 N. W. 997; Hurley v. Bendel, 67 Minn. 41, 69 N. W. 477; Lewis v. Bush, 30 Minn. 244, 15 N. W. 113; Slimmer v. State Bank of Halstad, 134 Minn. 349, 159 N. W. 795; Jackson Nat. Bank v. Christensen, 146 Minn. 303, 178 N. W. 494; Carlson v. Stafford, 166 Minn. 481, 208 N. W. 413; Merchants Nat. Bank v. State Bank, 172 Minn. 24, 214 N. W. 750. Intervener's rights accruing from such transfer cannot be affected by the plaintiff's effort to recover in this action. Indeed, plaintiff by garnishment can reach only that which defendant may demand from the garnishee. A physical delivery is not essential to a valid transfer of title thereto. Rail v. Little Falls Lbr. Co. 47 Minn. 422, 50 N. W. 471; E. L. Welch Co. v. Lahart Elev. Co. 122 Minn. 432, 142 N. W. 828. The intent to transfer is clear. Defendant parted with all power of control and relinquished all right to the property. We reach the conclusion that a valid transfer was made.

■ Respondent seeks to invoke the protection of the recording act. An assignment of a real estate mortgage is a conveyance within G. S. 1923, § 8195; Watts v. Lundeen, 165 Minn. 300, 206 N. W. 444. G. S. 1923, § 8226, provides:

"Every conveyance of real estate * * * and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate * * * and as against any attachment levied

thereon, or any judgment lawfully obtained at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance."

When a person contracts in reference to land an assignment of a mortgage thereon is governed by the recording act. Huitink v. Thompson, 95 Minn. 392, 104 N. W. 237, 111 A. S. R. 476, 5 Ann. Cas. 338; Foss v. Dullam, 111 Minn. 220, 126 N. W. 820; Watts v. Lundeen, 165 Minn. 300, 206 N. W. 444. The attachment mentioned in this statute has reference only to such as affects the title to real estate. Indeed the statute has to do only with real estate. Here we have to do with personal property, and counsel for respondent assert that a garnishment is an attachment within this statute. We think not. True, it is in the nature of an attachment, but in garnishment proceedings the plaintiff never gets more than an inchoate lien, which may be protected by proceeding to judgment. He may get a definite right. It is not a levy in the usual sense. It differs from an attachment in that usually there is no actual seizure of the property and no specific lien is acquired thereon. It is a judicial warning to the garnishee not to pay or restore property to the defendant, and if he does he may subject himself to judgment. The proceedings are usually directed to personal property. This recording act may be called to the aid of those only who have transactions relating to the title to real estate. Brooks v. American Lbr. & Const. Co. 162 Minn. 220, 202 N. W. 818. In this case an attachment would have accomplished no more than the garnishment. No recording act is involved. It follows that plaintiff cannot prevail, and a new trial is granted.

Reversed.