# MOLLIE TIMMINS v. EDWARD PFEIFER.[1]

March 28, 1930.

No. 27,536.

[1]Reported in 230 N. W. 260.

2

*Moonan & Moonan,* for appellant.
*Gallagher, Madden & Gallagher,* for respondent.

WILSON, C. J.

Plaintiff appealed from a judgment entered pursuant to an order granting defendant's alternative motion for judgment non obstante or a new trial.

Ignaz Pfeifer owned a 155-acre farm. He and his wife, Teresa, were aged people. They had eight children, Emil, Mary Sheridan, Emma Pfeifer, Edward, Joseph, Mollie Timmins, Amelia ·Fisher and Tena. Mr. Pfeifer died May 20, 1916, and Mrs. Pfeifer died March 3, 1923.

On December 18, 1906, the parents determined upon a distribution of their farm. They executed a writing stating their plans. That paper became lost or destroyed, and because thereof they made an affidavit on June 19, 1909, in which they stated the plan. Edward was to have 80 acres, which was deeded to him on December 18, 1906, at a price of $4,000. Of this $2,000 was paid by services which Edward had theretofore rendered his parents. The other $2,000 was to be paid by Edward's paying $500 to his brother Emil, and $500 each to three of his sisters, Mary Sheridan, Mollie Timmins and Amelia Fisher, with interest at six per cent until paid. It was therein stated that these four children upon being paid their $500 each could not come back upon the remaining 75 acres upon which the parents resided and were to live during their natural lives. It also provided that Edward would lose the 80 acres if he did not make these payments. The plan provided that Joseph, who was to stay and work the farm and care for his parents during their natural lives, was thereafter to become the sole owner of the 75 acres upon his paying his sister Emma $500 and his sister Tena $800. It seems that Joseph carried out his part of the plan. We are concerned only with the effect or substance of the plan and its characteristics as a family arrangement and Edward's obligations in relation thereto.

When Edward received his deed he paid to his father $500 which went to Emil. The money to be paid to Mary Sheridan, Mollie Timmins and Amelia Fisher was evidenced by a note given by Edward for $1,500. The father and mother were named as payees therein. It has been renewed every five years. The last note was dated June 1, 1917, and matured June 1, 1922. Edward has paid the $500 for Mary Sheridan and the $500 for Mollie Timmins, and they have received these amounts. The fact that the money may have passed through the mother's hands is immaterial. This action was commenced April 9, 1925, to recover the $500 which was to go to Amelia Fisher. Plaintiff claims the right to recover this money because of an assignment thereof to her made by Amelia Fisher on August 19, 1910. On that date the parents signed a writing apparently approving the assignment.

In 1926 Joseph instituted an action to quiet title against his brothers and sisters relative to the 75 acres, and many of the facts as above stated were therein adjudicated and a family arrangement was therein judicially sustained and established. The evidence in this case is not inconsistent therewith. The testimony of the defendant is not hostile to the general scheme, his main defense being payment.

The order granting judgment non obstante apparently rests upon the theory that Amelia Fisher never acquired an assignable interest in the property or indebtedness and really had nothing to assign; that plaintiff could not maintain the action upon the note made payable to the mother; and that the cause of action, if there was any, had outlawed.

The giving of the $1,500 note to the mother was a method adopted in a family arrangement to carry out a plan well understood by all. The intent is clearly established. The note and the renewals thereof were for the benefit of each of the children. Each child was given a share. Such share was definite. Even the share involved was payable at a definite time by the terms of the first note, but no one was dissatisfied by the renewals thereof. The plan has been carried out and executed as to all of the other children. It has been decided by the jury that the defendant has not paid the Amelia Fisher $500. It is not clear, but perhaps the parents or the survivor were to have the interest or income during their lives. Their receipt of all or a part thereof may have been an indulgence. That is not now important. Each of the three children at least became the owner of an interest in the note subject only to the parental right. This interest so established for each of these three children, even though subject to the rights of the parents which have now been terminated by their death, was definite and was assignable. Defendant concedes in the answer the arrangement and the giving of the note, but pleads payment and denies plaintiff's ownership and claim. Amelia had not received her $500. She assigned her right thereto to plaintiff, who has not been paid for this share. The jury has found the defense of payment untrue.

■ After the assignment was made, the note, originally made to both parents, was, after the first renewal and after the death of the father, renewed in the mother's name; but to the extent of this particular $500 interest therein, which is now all that remains of the indebtedness evidenced thereby, the plaintiff is the owner thereof by virtue of the arrangement and by virtue of the assignment. Since the death of the mother plaintiff is the sole owner of the unpaid note upon which there is a balance of $500 and interest. This is true whether plaintiff's title rests upon the writings and records or whether it rests in parol. Watson v. Goldstein, 176 Minn. 18, 222 N. W. 509. See First State Bank v. Seliskar, 169 Minn. 321, 211 N. W. 163. It being clear that plaintiff is now the real party in interest and that as determined by the jury defendant has not paid, the verdict of the jury was correct. It would seem that plaintiff stands before the court as the owner of a note made payable to another. If so she is entitled to recover. 5 Dunnell, Minn. Dig. (2 ed.) § 7315; Watson v. Goldstein, 176 Minn. 18, 222 N. W. 509.

■ Upon our consideration of the record plaintiff's cause of action rested in part upon the original note and the renewals thereof and did not accrue until the maturity of the last renewal on June 1, 1922; hence the action is not barred by the statute of limitations.

■ The complaint stated a cause of action. Defendant was not entitled to judgment on the pleadings. He was not under the rule of the common law entitled to judgment notwithstanding the verdict. Funkley v. Ridgway, 158 Minn. 265, 197 N. W. 280. Defendant having failed to move for a directed verdict at the close of the trial, the court was without authority to grant judgment non obstante under the statute. Funkley v. Ridgway, 158 Minn. 265, 197 N. W. 280; 3 Dunnell, Minn. Dig. (2 ed.) § 5079; G. S. 1923 (2 Mason, 1927) § 9495; Wilcox v. Wiggins, 166 Minn. 124, 207 N. W. 23.

The judgment is vacated and the order for judgment is reversed. The trial court will pass upon the motion for a new trial.

Reversed.

6

HILTON, J. (concurring in part).

I agree that there should be a reversal for the reason stated in paragraph four of the opinion. However I am of opinion that the trial court was right in its conclusion; that Amelia Fisher acquired no immediate interest in the property or indebtedness in 1906 when the conveyance was made to the defendant; that plaintiff obtained no right under the attempted assignment in 1910; that in any event, had there been such a right, her claim became barred by the statute of limitations.

