## In re UNIT OIL CO.
### No. 16012.

District Court, D. Minnesota, Fourth Division.

June 7, 1943.

Best, Flanagan & Rogers and Leonard Simonet, all of Minneapolis, Minn., for Zephyr Oil Co.

JOYCE, District Judge.

This matter is before the court on the Referee's certificate on review on the petition of the Zephyr Oil Company to review the order of the Referee directing Louis B. Schwartz to turn over to the trustee in bankruptcy certain sums in his hands. Hearing was had on February 8, 1943, before the undersigned judge of this court, at which Mr. Charles Halpern and Mr. Jonas Schwartz appeared in behalf of the Trustee, and Messrs. Best, Flanagan & Rogers by Leonard Simonet represented the Zephyr Oil Company. Arguments of counsel were heard and briefs were thereafter filed.

On July 9, 1941, the Zephyr Oil Company instituted garnishment proceedings against Louis B. Schwartz ancillary to its main action against the Unit Oil Company. Schwartz disclosed that he possessed $2,045 of the Unit Oil Company's funds. The Zephyr Oil Company obtained a judgment against the Unit Oil Company in its main action on May 29, 1942, and on June 23, 1942, a personal judgment for that amount was entered against Schwartz as garnishee. But on the previous day, June 22, 1942, an involuntary petition in bankruptcy had been filed against the Unit Oil Company.

Upon petition of the Trustee and after hearing the Referee in Bankruptcy ordered that the funds in Schwartz's possession be paid to the Trustee free and clear of any claim which the Zephyr Oil Company might have acquired by virtue of the garnishment proceedings. The Zephyr Company then petitioned for a review of this order, and the Referee has certified to this court the question, "* * * whether the trustee in bankruptcy or a creditor of the bankrupt has the better right to funds of the bankrupt in the possession of another where in a suit in the Minnesota District Court against the bankrupt the creditor served a garnishee summons before bankruptcy on the person so in possession of the funds, but judgment in such garnishment proceedings was not entered against the garnishee until the day following the filing of the bankruptcy petition."

The parties to the action agree that the controlling question is whether service of

Jonas Schwartz and Charles Halpern, both of Minneapolis, Minn., for the Trustee.

the garnishee summons creates a lien which survives the filing of the bankruptcy petition.

The case of In re West Hotel, D.C.Minn. 1928, 34 F.2d 832, seems directly in point and sustains the Referee, for it holds that because the lien obtained by the service of the garnishee summons is, in Minnesota, an inchoate lien which is not perfected until entry of the garnishment judgment against the garnishee, the service of a garnishee summons does not create a lien which survives the filing of the bankruptcy petition.

Although, as petitioner contends, that case may have turned upon Section 67, sub. f[1] on the hearing before the Referee in Bankruptcy, Judge Sanborn does not seem to have based his decision on that section, for he makes no reference to specific dates to establish the existence of the four months referred to in the section. Neither does he refer to that section. The gist of the decision seems to be contained in the last two lines of the opinion, which declare: "At the time the petition in bankruptcy was filed, the petitioner had no lien. The inchoate lien of a garnishment is only perfected by judgment. Marsh v. Wilson Bros., 124 Minn. 254, 144 N.W. 959."

■ The confusion may stem from the assumption that both sentences pertain to the Minnesota law. But Marsh v. Wilson Bros. holds that an inchoate lien was created by service and is perfected only by judgment. It is not authority for the first sentence which, literally, is contradictory of the second one. The reasonable construction of these two sentences seems to be that the first one refers to the existence of a lien contemplated by the Bankruptcy Act and that the second one refers to the existence of a lien under Minnesota law. There seems little doubt that the court must look both to state law, In re Blair, D.C., 108 F. 529; Yumet & Co. v. Delgado, 1 Cir., 1917, 243 F. 519, 520; and to the Bankruptcy Act, Metcalf Bros. &

Co. v. Barker, 1902, 187 U.S. 165, at page 173, 23 S.Ct. 67, 47 L.Ed. 122.

In view of the West Hotel case, therefore, the Referee's conclusion that the Zephyr Oil Company obtained no lien which survived filing of the bankruptcy petition is undoubtedly correct, although his memorandum might indicate that he assumed that both of the above quoted sentences referred to Minnesota law.

Petitioner argues that if the West Hotel case is not confined to the facts which were before the Referee in that case, the rule which it enunciates should be reconsidered. In view of the recent discussion of this case, Mussman and Riesenfeld, Garnishment and Bankruptcy, 27 Minnesota Law Review 1, and the importance of the problem, a reconsideration of the case may not be out of order.

In determining whether the case should be overruled, two questions become relevant: (1) does service of the garnishee summons create a lien under Minnesota law; and (2) does the lien, if one exists, survive the filing of the petition. I believe that both questions can be answered affirmatively.

I. Does service of the garnishee summons create a lien under Minnesota law?

The cases of Marsh v. Wilson Bros., 1913, 124 Minn. 254, 144 N.W. 959, and National Surety Company v. Hurley, 1915, 130 Minn. 392, 153 N.W. 740, 742, L.R.A. 1918F, 440, appear to be the leading Minnesota cases. Marsh v. Wilson Bros. holds that service of the garnishment summons creates an inchoate lien which is perfected by entry of judgment against the garnishee. Both petitioner and the trustee agree upon this, although the petitioner avoids using the word "inchoate" and fails to mention that the court declares the lien is an immature one until entry of the judgment.

National Surety Co. v. Hurley is similar to the instant case. The garnishee proceedings ancillary to the main action in that case were started more than four months prior to the filing of the bank-

---

[1] Section 67, sub. f, 30 Stat. 564, 11 U.S.C.A. § 107, sub. f, is now contained in Section 67, sub. a (1) of the Bankruptcy Act, 52 Stat. 875, 11 U.S.C.A. § 107, sub. a (1). Section 67, sub. a (1), which the litigants agree is not controlling in the instant case, provides: "Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition in bankruptcy or of an original petition under chapters X, XI, XII, or XIII of this [Act] title, by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this [Act] title."

ruptcy petition, but judgment had not yet been entered against the garnishee when the petition was filed. The trustee sought to obtain the funds in the garnishee's hands upon the grounds that the debtor's claim to those funds was contingent and therefore could not be the basis for a garnishment proceedings. In permitting the creditor to reach the funds the court held that the claim was *not* contingent and then said:

"Plaintiff's lien attached when the garnishee summons was served; the amount impounded thereby was definitely determined at the trial, if not earlier; and the decision of the learned trial judge was clearly correct."

The trustee argues that the statement that the lien attached on service of the garnishee summons is dictum. But he also argues, and correctly it seems, that in the instant case the creditor cannot obtain the funds in the garnishee's possession unless he has a lien upon them. Consequently, for the court in the Hurley case to find for the creditor therein, it was required, according to the theory of the trustee in the instant case, to assume or to find expressly that the creditor had a lien upon the goods in the garnishee's possession. So far as the facts in the opinion show, the only way that he could have obtained that lien was by service of the garnishment summons, and so far as any statement in the opinion shows, that was the only way in which he did obtain the lien of which the court spoke. So that, when the court expressly stated that the service of the garnishment summons created a lien, it seems to have reached that conclusion as decision, not dictum. The court quotes what is now Section 571.04 Minnesota Statutes for 1941, which the parties in the instant case rely upon to establish their respective positions. Therefore, the statement is important and, accepting the trustee's position in the instant case, requisite to the conclusion reached.

■ This construction of the Hurley case does not conflict with the decision of Marsh v. Wilson Bros. Nothing in the Hurley case shows that the lien created by service of the summons was not an inchoate lien or that it did not require perfection by judgment before it could be enforced. Further, the Minnesota Supreme Court's determination that the lien survives bankruptcy is not binding on this court, for bankruptcy is a question upon which Congress and therefore the Federal Courts have the final word. Metcalf Bros. & Co. v. Barker, supra. That case, however, does seem to indicate that the Minnesota Supreme Court considers that the entry of judgment, which it declared in the Marsh case "perfected" the lien, does not *create* the lien by perfection of it. If the court had thought that it did, then the court would have reached a result contrary to that which it reached, for if no lien existed when the petition in bankruptcy was filed, then, according to the theory of the trustee here, the creditor in that case could not have recovered as the court permitted him to do.

Justice Mitchell's statement in Irwin v. McKechnie, 1894, 58 Minn. 145, 59 N.W. 987, 988, 26 L.R.A. 218, 49 Am.St.Rep. 495, also seems to show that the court did not mean that the lien did not arise until entry of the judgment merely because it was not "perfected" until then. Justice Mitchell said: "The effect of the judgment is *merely* to determine the existence and amount of the *debt,* and to *substitute the plaintiff for the defendant* as the person to whom it is payable." (Italics mine.)

Neither of these effects creates the *lien.* Since the inchoate lien is perfected by entry of judgment, and since neither of the results of judgment effect the lien, it seems that entry of judgment does not perfect the lien by creating it. Rather, it seems that entry of judgment perfects the lien by removing its contingent character. That the lien is contingent upon entry of judgment follows from the rule that the lien cannot be enforced unless judgment is entered against the garnishee. Marsh v. Wilson Bros., supra.

Upon these premises, therefore, it seems that when the court declared in Marsh v. Wilson Bros. that the lien was perfected by entry of judgment against the garnishee, the court did not mean that the lien was created by entry of judgment. It meant that the lien was merely completed in the sense that it was no longer contingent.

The trustee cites several cases in support of his conclusion that the lien does not arise with service of the garnishee summons, but none seems helpful to him. His quotations from Pitzl v. Winter, 1905, 96 Minn. 499, 105 N.W. 673, 5 L.R.A., N.S., 1009, and Langdon v. Thompson, 1879, 25 Minn. 509, state that an inchoate

lien arises upon service and they are cited for that rule in Marsh v. Wilson Bros., supra. Further, they must be read in the light of the later Hurley case. Watson v. Goldstein, 1928, 176 Minn. 18, 222 N. W. 509, also recognizes that an inchoate lien arises upon service of the garnishee summons. The trustee seems to confuse the question of the lien's existence with its enforceability.

The trustee also argues that the lien does not arise until judgment because the garnishee is not liable until then. There does not seem to be any reason, however, why a lien cannot exist prior to the time personal liability against the garnishee might arise. In re Snitzer, 7 Cir., 1932, 62 F.2d 285.

■ I therefore believe, in view of these cases, that in Minnesota service of the garnishee summons creates an inchoate, or contingent, lien upon the property and that it is perfected by judgment in the sense that its contingency is removed and it may be enforced.

II. Does the lien survive the filing of the bankruptcy petition?

■ At the outset it is important to note that Federal decisions are controlling on this question, for a Federal statute is involved. Few cases except In re West Hotel, supra, are directly in point on the fact situation of the instant case. It is important to note also that Section 67, sub. a(1) is not itself in point here because a judgment was not entered until after the filing of the petition in bankruptcy and the garnishee summons was served more than four months before the petition was filed. Section 104 sub. a of 11 U.S. C.A., 52 Stat. 874, dealing with debts having priority, apparently is the provision governing this case, although neither party so states. Cases also have arisen under Section 67(1) or its predecessor sections in which the garnishee summons was served prior to the four month period and the judgment entered during that four month period. The question in each of those cases was whether the lien survived the filing of the bankruptcy petition. Since any liens obtained by judgment in those cases would be void because they were obtained against the insolvent less than four months before he filed bankruptcy, the cases really turned upon the question of the effect of the service of the garnishee summons more than four months before the bankruptcy petition was filed

and therefore are in point here. These cases are all discussed and analyzed in Mussman and Riesenfeld, Garnishment and Bankruptcy, 27 Minn.Law Review 1. Both petitioner and trustee refer to that article.

The leading case on the problem seems to be Metcalf Bros & Co. v. Barker, 1902, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122. That case arose upon an appeal from the decision of In re Lesser (I), D.C.N.Y.1900, 100 F. 433, which held that service of summons did *not* create a lien within the meaning of the bankruptcy act. But in the Metcalf case the United States Supreme Court held that service of the summons *did* create such a lien and reversed the lower court, Chief Justice Fuller writing the opinion. Among other things he said (page 174 of 187 U.S., page 71 of 23 S.Ct., 47 L.Ed. 122), after quoting Section 67 of the bankruptcy act:

"In our opinion the conclusion to be drawn from this language is that it is the lien created by a levy, or a judgment, or an attachment, or otherwise, that is invalidated, and that where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized. When it is obtained within four months the property is discharged therefrom, but not otherwise. A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens."

Although In re Lesser (I), and therefore the Metcalf case, was a case which involved a creditor's bill and not a garnishment proceedings, the rule of that case was applied prior to the Metcalf case in the garnishment case of In re Lesser (II), D.C.N.Y.1901, 108 F. 201, by the same judge who wrote the decision in Re Lesser (I). There seems little doubt that the Metcalf decision is sufficiently broad to apply to garnishment cases, Collier, The Law and Practice in Bankruptcy, 4th Ed. by Hotchkiss, 1903, 492, and it has been relied upon in garnishment cases like the instant one as authority for the rule that service of the garnishee summons creates a lien which survives the filing of the bankruptcy petition. See Armour Fertilizer Works v. Sanders, 5 Cir., 1933, 63 F.2d 902, at page 904; In re J. L. Philips & Co., D.C.Ga.1915, 224 F. 628; Haft & Bros. v. Wells, 10 Cir., 1937, 93 F.2d 991;

In re Mayhew, D.C.Md.1940, 31 F.Supp. 175, at page 177.

It would seem, therefore, that Metcalf Bros. & Co. v. Barker is applicable to the instant garnishment case if the lien which arises in Minnesota is like the lien which arose in that case.

In Re Lesser (I) the court [100 F. 436] held that service of the summons created a "provisional" lien, and therefore that the lien was " * * * contingent upon the recovery of a valid judgment, and liable to be defeated by anything that defeats the judgment. * * * "

By "provisional" Judge Brown meant "inchoate", for in the second Lesser case [108 F. 202] opinion he stated with reference to the first Lesser case, " * * * it was held by this court that the provisional or inchoate lien acquired * * * could not be made available by the judgment creditor. * * * "

Thus, the liens obtained by service of the summons in the Lesser cases were inchoate liens which were contingent until entry of a valid judgment. This is, as noted, the same kind of lien which arises in Minnesota upon service of the garnishment summons. Therefore, it seems that the lien which arises in Minnesota upon service of the garnishment summons must be held, upon the basis of the Metcalf case, to survive the filing of the petition in bankruptcy.

Several Federal Courts, in reliance on the Metcalf case, have recognized and applied the rule that inchoate liens obtained by service of garnishee summons are not discharged by filing of the bankruptcy petition. See In re Snitzer, 7 Cir., 1932, 62 F.2d 285; Haft & Bros. v. Wells, 10 Cir., 1937, 93 F.2d 991; In re Mayhew, D.C.Md.1940, 31 F.Supp. 175; and Armour Fertilizer Works v. Sanders, 5 Cir., 1933, 63 F.2d 902. See, also, McLeod v. Cooper, 5 Cir., 1937, 88 F.2d 194.

In Haft & Bros. v. Wells, supra, Judge Phillips holds that merely because a court considers that the inchoate lien is "perfected" by entry of judgment, as it is in Minnesota, it does not follow that the lien is not created before that time within the meaning of the bankruptcy act, citing Metcalf Bros. & Co. v. Barker, he said of the inchoate lien in that case, at page 995 of 93 F.2d:

"Since this lien arose more than four months prior to the filing of the petition in bankruptcy it was not affected by the

bankruptcy proceedings and the claimant had the right to *perfect* the lien by prosecuting the garnishment proceedings to judgment in the state court. A judgment *perfecting* the lien may be rendered within the four months' period or even after the filing of the petition in bankruptcy proceedings." (Italics mine.)

That the Supreme Court still agrees with its broad decision in the Metcalf case seems evident from Taubel, etc., Co. v. Fox, 1924, 264 U.S. 426, at page 430, 44 S.Ct. 396, at page 398, 68 L.Ed. 770, in which Justice Brandeis, citing Metcalf Bros. & Co. v. Barker, declared that the trustee's rights under Section 67 sub. f, now Section 67, sub. a(1) can be defeated by a showing that " * * * inchoate rights by way of lien had been acquired * * * " more than four months before the petition in bankruptcy had been filed.

■ The trustee in the instant case attempts to meet these cases by declaring that the lien acquired by service of the garnishee summons is not a specific one. But the courts recognize that the lien acquired need not be like other liens. The peculiarity of the lien in Re Lesser (I) and Re Lesser (II) was not one of the reasons which caused Judge Brown to hold as he did. In re Koslowski, D.C.M.D.Pa. 1907, 153 F. 823, at page 825. By ignoring the particular character of the lien the Supreme Court indicated that it thought the lien need not be an orthodox or completed one in order to survive filing of the bankruptcy petition. Its peculiarity was also recognized and ignored in In re Snitzer, supra.

The court in North Star Boot & Shoe Co. v. Ladd, 1884, 32 Minn. 381, at page 383, 20 N.W. 334, at page 335, said: "The garnishment is, in effect, an attachment of the 'indebtedness' of the garnishee to the defendant. Though, technically speaking, it may not give a 'specific lien' upon such indebtedness, its effect in conferring upon the plaintiff a specified right (over and above that of a mere general creditor) to the indebtedness for the payment of his claim, is substantially analogous to that acquired by an attachment of tangible property. This disposes of what we regard as the most important question of law involved in this case."

The cases of Ex parte Foster, 1842, Fed. Cas.No.4,960, 2 Story 131; In re Cook, 1842, Fed.Cas.No.3,152, 2 Story 376, and Matter of Bellows, Fed.Cas.No.1,278, 3

Story 428, are old cases which appear to be out of line with Metcalf Bros. & Co. v. Barker.

Since uniformity in law is desirable and since this court is bound by the decisions of the United States Supreme Court, I am of the view that In re West Hotel should not remain the law of this district. Its rule is contrary to that enunciated by the United States Supreme Court and the other Federal appellate courts which have decided the question in modern times. No case since the Metcalf case to which my attention has been directed has decided the question as it was decided in the West Hotel case.

■ It is my conclusion, therefore, that under decisions binding upon this court and other persuasive ones, the inchoate lien which arises in Minnesota upon service of the garnishee summons is not discharged by the filing of the bankruptcy petition.

■ Answering the Referee's question: The *creditor* of the bankrupt serving the garnishee summons has the better right to funds of the bankrupt in the possession of another where in a suit in the Minnesota District Court against the bankrupt the creditor served a garnishee summons before bankruptcy on the person so in possession of the funds, but judgment in such garnishment was not entered against the garnishee until the day following the filing of the bankruptcy petition.

It appears that no dispute exists as to the Findings of Fact made by the Referee and the same are hereby adopted and made a part hereof.

The court rejects and overrules the Referee's Conclusions of Law and makes the following Conclusions of Law:

1. That at the time of the service of the garnishment summons on July 9, 1941, Louis B. Schwartz held money owned by the bankrupt in the sum of two thousand forty-five and no/100 dollars ($2,045); that said money was held as agent for the bankrupt.

2. That on the 9th day of July, 1941, at the time of the service of the garnishment summons, the Zephyr Oil Company acquired a lien on the funds of the Unit Oil Company in possession of Louis B. Schwartz.

3. That a valid and enforcible personal judgment has been entered against Louis B. Schwartz in the District Court, Hennepin County, Minnesota, in said garnishment proceeding and that said Louis B. Schwartz is entitled to satisfy said judgment out of the money belonging to the Unit Oil Company in his possession at the time of the service of the garnishment service.

4. That the lien of the Zephyr Oil Company on the funds in the hands of Louis B. Schwartz is superior to the claim of the Trustee in Bankruptcy.

It Is Therefore Ordered, that said Louis B. Schwartz shall pay and turn over to the Trustee in Bankruptcy the residue of the money in his possession belonging to the Unit Oil Company after payment of the judgment entered against the said Louis B. Schwartz in the District Court of Hennepin County, Minnesota, on the 23rd day of June, 1942, in the garnishment proceeding entitled Zephyr Oil Company, a corporation, plaintiff, vs. Unit Oil Company, defendant, and Louis B. Schwartz, garnishee.

An exception is allowed.