Tɪʀᴢᴀʜ A. Cox, ᴇᴛ ᴀʟ.,[1] Pᴇᴛɪᴛɪᴏɴᴇʀs *v*. Cᴏᴍᴍɪssɪᴏɴᴇʀ ᴏғ Iɴᴛᴇʀɴᴀʟ Rᴇᴠᴇɴᴜᴇ, Rᴇsᴘᴏɴᴅᴇɴᴛ

Dockets Nos. 4052–70, 4069–70, 4082–70. Filed September 13, 1971.

*Herman Ginsburg* and *Rodney P. Cathcart*, for the petitioners.
*Roy S. Fischbeck*, for the respondent.

Dᴀᴡsᴏɴ, *Judge:* In these consolidated cases respondent determined the following deficiencies in petitioners' Federal income taxes for 1966:

| Petitioners | Docket No. | Deficiency |
|---|---|---|
| Tirzah A. Cox | 4052–70 | $4,422.18 |
| S. E. Copple and Tekla R. Copple | 4069–70 | 22,474.90 |
| S. Edward Copple and Mary Helen Copple | 4082–70 | 4,770.40 |

Certain concessions have been made by the parties and will be given effect in the Rule 50 computations. The only question to be decided is whether the petitioners realized taxable income in the form of constructive dividends as a consequence of two payments made by the Commonwealth Co. to C & D Construction Co. in 1966.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Tirzah A. Cox is a single person who filed her Federal income tax return for 1966 with the district director of internal revenue at Omaha, Nebr. She was a resident of Lincoln, Nebr., at the time she filed her petition herein.

S. E. Copple and Tekla R. Copple and S. Edward Copple and Mary Helen Copple, respectively, are husband and wife. Both families filed joint income tax returns for 1966 with the district director of internal revenue at Omaha, Nebr. Both families were residents of Lincoln,

---

[1] Proceedings of the following petitioners are consolidated herewith: S. E. Copple and Tekla R. Copple, docket No. 4069–70, and S. Edward Copple and Mary Helen Copple, docket No. 4082–70.

Nebr., at the time they filed their petitions herein. S. Edward Copple is the son of S. E. Copple.

Two companies were involved in the transactions relevant to this case—the Commonwealth Co. and C & D Construction Co., Inc. At all times relevant to these cases, the affairs of both companies were controlled by S. E. Copple.

The Commonwealth Co. (hereinafter sometimes called Commonwealth) was incorporated in Nebraska in 1933. It was licensed by the Nebraska Department of Banking as an industrial loan and investment company and subject to the department's general supervision and control. During the years 1961 to 1967, S. E. Copple and Tekla R. Copple were president and secretary-treasurer, respectively, of Commonwealth, as well as members of its board of directors along with S. Edward Copple and Helen Cariotto. Tirzah Cox was a long-time employee of Commonwealth. During the same period Commonwealth had outstanding 2,100 shares of common stock owned as follows:

| Shareholder | Number of shares |
|---|---|
| S. E. Copple | 1,098.50 |
| Edward, Inc | 213.19 |
| Tekla R. Copple | 3.19 |
| Helen Cariotto | 14.87 |
| Copple Insurance Agency, Inc | 500.00 |
| S. E. Copple Investment, Inc | 259.00 |
| Tirzah A. Cox | 10.00 |
| Mary Copple | 1.25 |

As of April 15, 1961, Commonwealth had outstanding 434 shares of preferred stock owned as follows:

| Shareholder | Number of shares | Shareholder | Number of shares |
|---|---|---|---|
| Nellie L. & Mildred Ohslund | 110 | Frank Rexilius | 20 |
| Susan T. Madden | 6 | Ruth Dunn | 5 |
| C. B. Burbridge | 50 | Melba Hoc | 2 |
| Zelda Dreger | 1 | S. E. Copple Investments, Inc | 2 |
| Tirzah Cox | 30 | Robert Bullock | 4 |
| Ruth F. Cox | 5 | S. Edward Copple | 10 |
| Kathryn G. Cox | 12 | Tekla R .Copple | 7 |
| Dorothy J. Bures | 40 | E. F. Schwedhelm | 100 |
| Betty Rexilius | 30 | | |

As of March 24, 1966, Commonwealth had outstanding 410 shares of preferred stock owned as follows:

| Shareholder | Number of shares | Shareholder | Number of shares |
|---|---|---|---|
| Susan T. Madden | 6 | Melba Hoc | 2 |
| C. B. Burbridge | 50 | S. Edward Copple | 10 |
| Zelda Dreger | 1 | Tekla R. Copple | 7 |
| Tirzah Cox | 95 | E. F. Schwedhelm | 100 |
| Kathryn G. Cox | 12 | S. E. Copple | 2 |
| Frank Rexilius | 20 | Leon Beers | 100 |
| Ruth Dunn | 5 | | |

As of June 21, 1966, Commonwealth had outstanding 608 shares of preferred stock owned as follows:

| Shareholder | Number of shares | Shareholder | Number of shares |
|---|---|---|---|
| Susan T. Madden | 6 | Melba Hoc | 2 |
| C. B. Burbridge | 50 | S. Edward Copple | 10 |
| Zelda Dreger | 1 | Tekla R. Copple | 7 |
| Tirzah Cox | 95 | E. F. Schwedhelm | 100 |
| Kathryn G. Cox | 12 | Leon Beers | 100 |
| Frank Rexilius | 20 | Ida Bice | 200 |
| Ruth Dunn | 5 | | |

Each outstanding share of common and preferred stock referred to above was entitled to one vote. S. E. Copple, during the years 1961 to 1967, owned Copple Insurance Agency and S. E. Copple Investment, Inc. His son, S. Edward Copple, owned Edward, Inc. Marv Copple is another son of S. E. Copple.

The C & D Construction Co., Inc. (hereinafter sometimes called C & D), was incorporated in Nebraska in 1954 for the purpose of constructing homes. In 1959, C & D left the construction business and entered the business of purchasing commercial paper. S. Edward Copple, S. E. Copple, and Tirzah A. Cox were president, vice president, and secretary-treasurer, respectively, of C & D and constituted its board of directors. During the relevant years, C & D had outstanding 20 shares of common stock owned as follows: S. E. Copple, 10 shares; S. Edward Copple, 5 shares; Tirzah Cox, 5 shares.

Commonwealth and C & D occupied the same offices in Lincoln, Nebr.

On July 2, 1960, Commonwealth loaned $12,854.64 to Hyway Motors, Inc., and received a note for that amount, with interest, signed by Kenneth Ferguson once on behalf of the borrower and again as comaker. The note was secured by collateral consisting of a chattel mortgage, notes receivable, and an Oregon real estate mortgage. On the same date, Commonwealth loaned $42,000 to Hyway Mobile Homes, Inc., in exchange for a note for that amount, with interest, signed by Kenneth Ferguson as secretary-treasurer of Hyway Mobile Homes, Inc., and by Kenneth Ferguson and Amy Ferguson as comakers. Collateral consisted of a real estate mortgage, notes receivable, and stock pledges. Both the Hyway Motors note and the Hyway Mobile Homes note were renewed on January 4, 1961. All notes were payable to the order of Commonwealth.

Commonwealth had made other loans to companies run by Kenneth Ferguson and to Ferguson's personal account. Early in 1961, S. E. Copple, as president of Commonwealth, became concerned about the extent of these loans because he feared that the Nebraska Department of Banking would order Commonwealth to "charge off" some of the

notes accompanying these loans and that such action would jeopardize Commonwealth's solvency.

On April 14, 1960, the board of directors of C & D Construction Co., Inc., authorized S. E. Copple to purchase "several loans" from Commonwealth. Between April 14 and August 16, 1960, C & D purchased commercial paper (not further identified by the record) from Commonwealth and received payment thereon. On April 7, 1961, the board of directors of C & D authorized S. E. Copple to negotiate a $100,000 loan from First Continental National Bank & Trust Co. and to use the money to purchase additional commercial paper from Commonwealth. On April 12, 1961, C & D borrowed $100,000 from First Continental National Bank & Trust Co. and executed its note (due October 9, 1961) for that amount, with interest. The note was signed by S. Edward Copple, president, and Tirzah Cox, secretary-treasurer, and endorsed on the back by S. E. Copple. On April 15, 1961, C & D paid $54,869.39 of the $100,000 to Commonwealth for the renewed Hyway Motors and Hyway Mobile Homes notes. The notes were promptly recorded in the notes receivable ledger of C & D as follows:

| Date | Items | Debits |
|---|---|---|
| April 15, 1961_____ Check 116, CWCo.— Hyway Mobile Homes | | $42,000.00 |
| Hyway Motors | | 12,869.39 |

Later, on June 22, 1961, the fact that these and other notes (totaling between $80,000 and $90,000) had been purchased was reported to and approved by the board of directors of C & D.

When C & D's $100,000 note came due, a balance of $80,000 remained unpaid. The note was renewed at that time, October 9, 1961, and eight subsequent times between October 9, 1961, and September 22, 1965. Each renewal note was contemporaneously endorsed by S. E. Copple.

Neither the Hyway Motors note nor the Hyway Mobile Homes note was endorsed in any manner by Commonwealth or removed from Commonwealth's loan files.

The charter of Hyway Mobile Homes, Inc., was canceled on October 31, 1961, for failure to file a 1960 annual report. Hyway Motors, Inc., was dissolved in 1962 for nonpayment of State occupation taxes. On or about December 30, 1964, C & D, by S. E. Copple, vice president, and Commonwealth, by S. E. Copple, president, executed a document releasing Kenneth Ferguson and several of his companies from any liability on the notes of the above defunct corporations.

The sum of $1,515 was collected and credited by C & D on the Hyway Mobile Homes note during October 1961. There remained thereafter an unpaid balance on the two notes of $53,354.39, plus interest, which C & D at all times carried on its books as a viable asset.

In 1966, Commonwealth made two payments to C & D. On March 24, 1966, Commonwealth transferred $12,869.39 to C & D. This amount equaled the principal balance of the Hyway Motors note. C & D used $11,800 of this sum to pay off part of the interest and principal which it owed First Continental National Bank & Trust Co. On June 21, 1966, Commonwealth paid to C & D $40,485, the principal balance of the Hyway Mobile Homes note. On the same date, C & D paid to First Continental National Bank & Trust Co. the sum of $25,962.50, thereby further reducing its debt. In all, Commonwealth paid $53,354.39 to C & D and C & D in turn paid $37,762.50 to the bank; the balance, $15,591.89, was loaned by C & D to another corporation, Capitol Beach, Inc., which eventually repaid it.

The two payments by Commonwealth to C & D were recorded in the notes receivable ledger of C & D as follows:

| Date | Item | Credits |
|---|---|---|
| March 24, 1966 | CWCo—payment, principal note | $12,869.39 |
| June 21, 1966 | CWCo—payment, principal note | 40,485.00 |

During the period June 13, 1961, through February 22, 1966, the Nebraska Department of Banking examined the records and books of Commonwealth at the close of business June 13, 1961, February 5, 1962, August 6, 1962, August 12, 1963, April 30, 1964, December 8, 1964, and February 22, 1966. In connection with each such examination, the Department of Banking prepared and furnished to the directors of Commonwealth a "Report of Examination" which contained information based upon the records and books of Commonwealth, upon statements made to the examiner by directors, officers, and employees, and upon information derived from other sources which the examiner considered reliable and correct. The reports contain schedules for "Borrowings"[2] and "Contingent Liabilities."[3] The Hyway Motors note and the Hyway Mobile Homes note are not mentioned in any of these reports except in the Report of Examination at close of business April 30, 1964, where they are listed as "contingent liabilities" and described as "sold to the C & D Construction Co. with recourse." The reports also contain an Officer's Questionnaire signed by S. E. Copple as president of Commonwealth. Included as item 19 of the questionnaire is the following statement: "If bank has any direct, indirect, or contingent liabilities not specifically referred to above which do not appear on its books, * * * furnish full information." The response given in each of the seven questionnaires is "None."

---

[2] "This schedule details liabilities for borrowed money whether in form of bills payable, rediscounts, assets sold under repurchase agreement, certificate of deposit, open accounts, or otherwise."

[3] "This schedule includes liabilities definitely contingent in nature."

For calendar years 1961 through 1966, Commonwealth enjoyed an annual profit. It reported on its Federal corporation income tax returns the following amounts of taxable income:

| Year | Amount |
|------|--------|
| 1961 | $25, 369. 43 |
| 1962 | 20, 746. 81 |
| 1963 | 51, 330. 01 |
| 1964 | 22, 952. 87 |
| 1965 | 13, 653. 59 |
| 1966 | 44, 028. 41 |

During the same 6-7 year period, Commonwealth reported earned surplus and undivided profits as follows:

| Year | Amount |
|------|--------|
| 1961 | $278, 840. 72 |
| 1962 | 306, 073. 25 |
| 1963 | 341, 494. 47 |
| 1964 | 324, 025. 83 |
| 1965 | 267, 735. 72 |
| 1966 | 291, 059. 80 |

C & D, on the other hand, did not prosper. Its Federal corporation income tax returns for fiscal years ending July 31, 1962, through July 31, 1967, reveal the following items and amounts:

| Fiscal year | Total gross income | Total deductions | Taxable income |
|-------------|--------------------|------------------|----------------|
| 1962 | $6, 917. 03 | $4, 819. 89 | $2, 097. 14 |
| 1963 | 5, 215. 51 | 4, 620. 24 | 595. 27 |
| 1964 | 4, 117. 36 | 4, 908. 29 | (790. 93) |
| 1965 | 1, 505. 73 | 7, 258. 06 | (5, 752. 33) |
| 1966 | 1, 426. 52 | 3, 855. 16 | (2, 428. 64) |
| 1967 | 1, 328. 35 | 2, 010. 67 | (682. 32) |

The balance sheets of C & D's tax returns report assets and liabilities as follows:

| | Fiscal year ending July 31— | | |
|---|---|---|---|
| | 1962 | 1963 | 1964 |
| *Assets* | | | |
| Cash | $17, 131. 23 | $2, 419. 75 | $1, 731. 23 |
| Notes and accounts receivable | 72, 836. 51 | 87, 290. 02 | 75, 748. 27 |
| Loans to stockholders | | | 12, 500. 00 |
| Total assets | 89, 967. 74 | 89, 709. 77 | 89, 979. 50 |
| *Liabilities* | | | |
| Mortgages, notes, bonds payable in less than 1 year | 80, 000. 00 | 80, 000. 00 | 80, 000. 00 |
| Other current liabilities | 61. 29 | 178. 58 | 1, 239. 24 |
| Other liabilities | 162. 81 | | |
| Capital stock | 2, 000. 00 | 2, 000. 00 | 2, 000. 00 |
| Earned surplus and undivided profits | 7, 743. 64 | 7, 531. 19 | 6, 740. 26 |
| Total liabilities | 89, 967. 74 | 89, 709. 77 | 89, 979. 50 |

| | Fiscal year ending July 31— | | |
|---|---|---|---|
| | 1965 | 1966 | 1967 |
| *Assets* | | | |
| Cash | $1,021.89 | $2,576.56 | $584.42 |
| Notes and accounts receivable | 60,705.38 | 19,859.85 | 359.85 |
| Other current assets | | 1,079.40 | 605.56 |
| Loans to stockholders | 22,500.00 | 22,500.00 | 16,800.00 |
| Total assets | 84,227.27 | 46,015.81 | 18,349.83 |
| *Liabilities* | | | |
| Mortgages, notes, bonds payable in less than 1 year | 80,000.00 | 45,000.00 | 17,500.00 |
| Other current liabilities | 1,239.34 | 277.94 | 165.14 |
| Capital stock | 2,000.00 | 2,000.00 | 2,000.00 |
| Earned surplus and undivided profits | 987.93 | (1,262.13) | (1,315.31) |
| Total liabilities | 84,227.27 | 46,015.81 | 18,349.83 |

### ULTIMATE FINDINGS

The sale of the Hyway Motors note and Hyway Mobile Homes note by Commonwealth to C & D was without recourse. No indebtedness or liability to C & D, contingent or otherwise, arose on the part of Commonwealth as a result of this transaction.

At the time of the payments by Commonwealth on March 24 and June 21, 1966, C & D did not possess sufficient funds or other assets with which to meet its obligation to the bank. Therefore, the above payments were made on behalf of petitioner S. E. Copple who, in substance, was primarily liable on his endorsement.

### OPINION

These cases arise out of two transactions, one in 1961 and the other in 1966, between The Commonwealth Co., a State-regulated investment company, and C & D Construction Co., a sales-finance company. S. E. Copple directed the affairs of both companies; he, together with the other petitioners, owned all of the stock of C & D and voted, directly or indirectly, more than 75 percent of the stock of Commonwealth. In 1961, Commonwealth sold to C & D two notes which were doubtful, but not delinquent. The sale was made to avoid problems with the State regulator agency, the Nebraska Department of Banking. It was believed that the Department of Banking would order Commonwealth to charge off these loans. C & D borrowed funds in order to purchase the two notes and S. E. Copple personally endorsed C & D's bank note. On March 24 and June 21, 1966, Commonwealth paid to C & D amounts equal to the principal balances of the two notes. C & D then used a substantial part of these sums to make interest and principal payments on its bank note.

Respondent's position is that the payments made by Commonwealth to C & D constitute constructive dividends to S. E. Copple. He contends that because the notes which it purchased from Commonwealth became worthless, C & D was insolvent in 1966 and thus unable to

pay its bank note; that S. E. Copple, by virtue of his control of both companies, caused Commonwealth to gratuitously transfer the funds in question to C & D; and that such transfer resulted in a personal and economic benefit to S. E. Copple since it wiped out his personal liability as endorser. Alternatively, respondent contends that the payments constitute constructive dividends to S. E. Copple, S. Edward Copple, and Tirzah A. Cox *in proportion to their respective stock holdings in Commonwealth.*[4] Petitioners, according to respondent, caused Commonwealth to make the payments to C & D by exercising their collective control and, as a result, received an economic benefit— C & D was given the funds to meet its obligation and to continue its business and petitioners, as sole owners of C & D, were spared the expense of liquidation losses or money contributions.

Petitioners' position is that the sale of notes to C & D was, in fact, a loan which was disguised as a sale and accompanied by an understanding that Commonwealth would repurchase the notes; that the payments in 1961 by Commonwealth were made pursuant to the repurchase agreement; and that petitioners never received any part of, or benefit from, the payments.

The outcome turns upon a factual determination, namely, whether the sale of the notes in 1961 was accompanied by an unwritten repurchase agreement. The burden of proof is on the petitioners. Rule 32, Tax Court Rules of Practice. Based on all the evidence, we conclude that petitioners have failed to carry that burden.

The record simply does not support petitioners' contention that a bona fide loan was intended on April 15, 1961, when C & D purchased the two notes from Commonwealth. There is no written evidence of a side agreement; no evidence, oral or written, of a method of, or time for repayment; no evidence of an agreement fixing a rate of interest or payment of interest; and no evidence concerning collateral or other security. In addition, there is no evidence of any bookkeeping entries by Commonwealth or C & D showing the alleged loan as a payable or receivable, respectively. Commonwealth's balance sheets attached to its tax returns for the years 1961 through 1965 do not reflect the amount of the alleged loan in "Other Current Liabilities." Reports

---

[4] A minor controversy exists concerning the italicized portion of respondent's alternative theory. The explanations which were attached to the statutory notices sent to petitioners Tirzah A. Cox and S. Edward and Mary Helen Copple were predicated upon the theory that the payments constituted constructive dividends to all of the petitioners in proportion to their respective stock ownership in C & D, rather than in proportion to their holdings in Commonwealth. This view was reiterated at trial. Petitioners replied that respondent is bound by his prior statements. They have not, however, claimed that they were surprised or misled. We do not think respondent has raised a new issue or so confused the existing issue, receipt of constructive dividends, that petitioners' presentations have suffered. Cf. *Thomas Wilson,* 25 T.C. 1058 (1956) ; *Sheldon Tauber,* 24 T.C. 179 (1955). Under these circumstances we are free to decide the issue in accordance with any theory. *Wilkes-Barre Carriage Co.,* 39 T.C. 839, 845–846 (1963), affd. 332 F. 2d 421 (C.A. 2, 1964).

prepared by the Nebraska Department of Banking, with one exception, do not mention the alleged loan.

The corporate minutes of C & D state in plain language that the transaction was a "purchase." If an agreement to repurchase existed, it could have been disclosed in these minutes.

Furthermore, no explanation is given for C & D's failure to demand repayment or to attempt to enforce the alleged agreement. Yet, at all times between 1961 and 1966, Commonwealth had the wherewithal to repay the alleged loan. Likewise, no information is offered concerning C & D's usual practice regarding the purchase of commerical paper from Commonwealth.

As proof that the sale was in reality a loan, petitioners point to a "Report of Examination" which was made by the Department of Banking 3 years after the 1961 transaction. The report mentions the two notes in question and describes them as sold to C & D "with recourse." Petitioners, however, do not attempt either to explain why the notes were not mentioned in four earlier reports, dated June 13, 1961, February 5, 1962, August 6, 1962, and August 12, 1963, or to trace the sources of this report. It is possible that the conclusion of the report was based solely on interviews with the officers of Commonwealth. As a result, we do not find such evidence persuasive.

We have trouble understanding S. E. Copple's explanation of his negative answers, included in the examination reports, to questions concerning the existence of any undisclosed loans or contingent liabilities. He stated that his answers were oversights and that he had not bothered to carefully review the reports. Yet he indicated that his reason for disguising the loan as a sale was to fool the State banking department. It seems to us that S. E. Copple would have been anxious to learn whether this plan had been discovered.

Petitioners also claim that Commonwealth paid interest to C & D at a rate of 6 percent for 2 years. As proof, they offer the testimony of S. E. Copple, the testimony of his accountant, the accountant's working papers, and two bank deposit slips of C & D. We are not inclined, however, to give much weight to this testimony. It is self-serving or client-serving at best. Where, as here, the facts and the evidence are peculiarly subject to the petitioners' control, the petitioners should not be so easily relieved of their burden of proof. *Weise* v. *Commissioner*, 93 F. 2d 921 (C.A. 8, 1938), certiorari denied 304 U.S. 562 (1938). With regard to the figures represented on the working sheets and the deposit slips, we note that the interest is not identified as interest owed by Commonwealth in connection with the purported loan to C & D. It is just as likely, as respondent points out, that Commonwealth merely acted as a conduit for payments by the original makers. As for the remainder of the record, it is inexplicably

devoid of any ordinary books or records of Commonwealth or C & D which show payment by the former to the latter of interest on the alleged advancement.[5] Accordingly, we are constrained to find that no such interest was paid.

Even if we found that interest was paid by Commonwealth for 2 out of 5 years, we would not consider this fact determinative. Cf. *Ben R. Meyer*, 45 B.T.A. 228 (1941). Whether a loan was intended or was not intended must be decided upon all of the facts. *William C. Baird*, 25 T.C. 387 (1955). S. E. Copple dominated both corporations and could transfer and characterize funds as he wished. Interest, if it was paid at all, was for only 2 years, 1962 and 1963. Why? In calendar years 1964 and 1965, Commonwealth had earned surpluses and undivided profits of $324,025 and $267,735.72, respectively. During the same years, C & D was in need of funds. In short, we find that the behavior of the two parties to the alleged loan does not evidence a bona fide debtor-creditor relationship.

What we have searched for and have been unable to find is a preponderance of evidence showing that Commonwealth was definitely obligated to repay C & D at the time of the transaction in 1961. We have found, instead, that Commonwealth was not bound to repay C & D. Petitioners could have just as easily argued that the disputed transaction was a straightforward sale.

Petitioners contend that a sale without recourse cannot be found where the notes were never endorsed or delivered. But it is clear to us that the notes, which were payable to the order of Commonwealth, were validly transferred without endorsement. See, e.g., *Peterson v. Swanson*, 223 N.W. 287 (Minn. 1929) ; *Watson v. Goldstein*, 222 N.W. 509 (Minn. 1928). While delivery is essential to a valid transfer of the notes, what constitutes delivery largely depends upon the intention of the parties. *In Re Smith's Estate*, 56 N.W. 2d 477 (Iowa 1953) ; *In Re Shama's Estate*, 65 N.W. 2d 360 (Iowa 1954). Actual delivery is unnecessary. Constructive delivery will suffice. *In Re Shama's Estate, supra; In Re Smith's Estate, supra; Watson v. Goldstein, supra.* Considering that both companies intended the notes to be transferred, both occupied the same office space, and both were dominated by the same person, we have no hesitancy in finding a constructive delivery of the notes to C & D. Cf. *In Re Reeve's Estate*, 82 N.W. 912 (Iowa 1900).

Next we turn to the question of whether the payments by Commonwealth to C & D in March and June 1966 constituted constructive dividends to petitioners and, if so, to whom and in what amounts.

---

[5] One exhibit purports to list various interest payments by Commonwealth to C & D as of Dec. 29, 1962, and Dec. 23, 1963. Because there is no evidence of who made this list, what purpose it was intended to serve, or when it was made, we have not been able to make much use of it, except to compare its figures with those of the deposit slips and the accountant's working papers.

Respondent argues that the total amount of the payments constitutes income taxable to S. E. Copple under sections 61, 301, and 316 of the Internal Revenue Code of 1954. He reasons that because C & D was insolvent, S. E. Copple would have been liable on his endorsement and the payments by Commonwealth to C & D relieved him of such obligation. We agree, in general, but we find that petitioner received constructive dividends only to the extent that the amounts transferred to C & D were used to satisfy the bank note.

Respondent has shown that as of July 31, 1965, C & D was insolvent, suffering from a net operating loss, and showing a deficit surplus. This was accomplished by adjusting C & D's 1965 corporate tax return to reflect the worthlessness of the Hyway Motors and Hyway Mobile Homes notes. S. E. Copple's refutation amounts to little more than a denial. He has not attempted to show an improvement of circumstances prior to March and June, 1966; nor has he demonstrated any means by which C & D could have escaped its financial dilemma. Thus, we conclude that C & D was unable to pay its debt and would have been forced to default if Commonwealth had not given it funds to pay its bank note.

The record establishes that S. E. Copple signed the bank note, and the notes renewing it, as an accommodation endorser. In form, he was secondarily liable on the instrument. Under the circumstances, however, he was only one step away from being primarily liable and must be treated as such for tax purposes. To hold otherwise would be contrary to the settled rule that substance prevails over form, where the form does not coincide with economic reality. See *John D. Gray*, 56 T.C. 1032 (1971), and cases cited therein.

In view of our finding that the transaction in 1961 did not create a legal obligation on the part of Commonwealth to repay C & D, we cannot discern—and petitioners do not supply—any valid business purpose for the transfers in 1966. Compare *W. B. Rushing*, 52 T.C. 888 (1969), affd. 441 F. 2d 593 (C.A. 5, 1971); *Ruben v. Commissioner*, 97 F. 2d 926 (C.A. 8, 1938), both involving payments by a corporation for a valid business purpose. In our judgment the transfers were caused by S. E. Copple in order to avoid liability on his endorsement. Such corporate discharge of the personal liability of a shareholder is a dividend to the extent of the corporation's (Commonwealth's) earnings and profits. *Wall v. United States*, 164 F. 2d 462 (C.A. 4, 1947).[6]

We disagree with respondent's determination as to the other petitioners. None of them were personally liable on the note; consequently, none received dividend income as a result of the payments by Commonwealth. As for the theory that they were spared the expense of liquidation losses or money contributions, we think it is too tenuous under these particular facts and circumstances. Cf. *Neiderkrome* v.

---

[6] See also *Charles A. Sammons,* T.C. Memo. 1971–145; *Old Dominion Plywood Corp.,* T.C. Memo. 1966–135. (involving similar facts).

*Commissioner*, 266 F. 2d 238 (C.A. 9, 1958) ; *Holsey* v. *Commissioner*, 258 F. 2d 865 (C.A. 3, 1958). And respondent has not argued that the others benefited from an increase in their equity in Commonwealth, probably because their holdings in Commonwealth were relatively small.

*Decisions will be entered under Rule 50.*

